UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

03-12306 RGS

*****************************************

KENNETH AND PAMELA PRICE JEAN

　　　　　　　Plaintiffs

v.

CITY OF ASHBURNHAM POLICE
DEPARTMENT, CITY OF WINCHENDON
POLICE DEPARTMENT, ROB HARRINGTON,
in his capacity as CHIEF OF THE WINCHENDON
POLICE DEPARTMENT, JACK MURRY, in his
capacity as CHIEF OF THE ASHBURNHAM
POLICE DEPARTMENT, TODD C. PARSONS
RAYMOND M. ANAIR, ROBERT BRENNON,
WILLIAM P. GEOFFROY, BRIAN HART,
KEVIN AHEARN, KEVIN E. WOLSKI
OFFICER JOHN DOE, OFFICER JOHN POE.

　　　　　　　Defendants

*****************************************

MAGISTRATE JUDGE Collings

C.A. NO.

AMOUNT $ 150
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FOM
11/14/03

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is an action against officers of the Town of Ashburnham and the Town of

Winchendon police departments for civil rights and other violations causing loss and damage to

the plaintiffs, Kenneth Jean and Pamela Price Jean, arising out of the unlawful detention, assault

and battery, and arrest and prosecution of the plaintiffs on various occasions without probable

cause, in a series of incidents that began in the summer of 1999. Defendant Officers Todd C.

Parsons, Raymond M. Anair, Robert Brennon, William P. Geoffroy, Brian Hart, Kevin Ahearn,

Kevin E. Wolski, and two currently unidentified officers from the Ashburnham Police

Department violated the state and federal civil rights of the plaintiffs by arresting the plaintiffs

without probable cause multiple times, by maliciously prosecuting the plaintiffs without

probable cause, and by otherwise tortiously injuring the plaintiffs.

The claims against the Towns of Ashburnham and Winchendon and their Chiefs of Police arises from the failure to train, supervise and discipline their officers, defendants Parsons, Anair, Brennon, Hart, Ahearn, Wolski, Geoffroy and two currently unidentified officers, adequately, thereby giving them the message that they could misuse their authority as police officers and that such conduct would be tolerated or ignored by the defendant Police Departments.

PARTIES

1. The Plaintiffs, Kenneth and Pamela Price Jean, are individuals with a usual residence in Ashburnham, Worcester County, Massachusetts entitled to protections of the United States Constitution and the Massachusetts Declaration of Rights.

2. Defendant Town of Ashburnham Police Department is a department of the Town of Ashburnham, a municipality located in the County of Worcester in the Commonwealth of Massachusetts, and is the employer of defendants Parsons, Anair, Brennon, Hart, and Ahearn.

3. Defendant Jack Murry was a duly appointed Chief of Police of the Town of Ashburnham Police Department acting under color of law at all times relevant hereto and is named in his individual and official capacity.

4. Defendant Kevin Ahearn was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto and is named in his individual and official capacities.

5. Defendant Brian Hart was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto and is named in his individual and official capacities.

-2-

6. Defendant Robert Brennon was a duly appointed and acting Sargent of the Ashburnham Police Department at all times relevant hereto and is named in his individual and official capacities.

7. Defendant Raymond M. Anair was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto and is named in his individual and official capacities.

8. Defendant Todd Parsons was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto and is named in his individual and official capacities.

9. Defendant Town of Winchendon Police Department is a department of the Town of Winchendon, a municipality located in the County of Worcester in the Commonwealth of Massachusetts, and is the employer of defendants Kevin E. Wolski and William P. Geoffroy.

10. Defendant Rob Harrington was a duly appointed Chief of Police of the Town of Winchendon Police Department acting under color of law at all times relevant hereto and is named in his official capacity.

11. Defendant Kevin E. Wolski was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto and is named in his individual and official capacities.

12. Defendant William P. Geoffroy was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto and is named in his individual and official capacities.

-3-

## STATEMENTS OF FACTS

13. This series of events began in the summer of 1999 when two currently unidentified Officers from the Ashburnham Police Department served a restraining order, upon plaintiff Kenneth Jean. Although the plaintiffs are long time stable residents of Ashburnham, who own and have owned their own home for many years and plaintiff Kenneth Jean operates and has operated a local business for years, the restraining order was served, unnecessarily, by rousing the plaintiffs from their bed at one a.m. Over the objections of plaintiff Kenneth Jean and the unidentified younger officer at the scene, the senior officer forced his way into the plaintiffs' home and searched it, without a warrant or any probable cause, until he "found" a small amount of marijuana.

14. The second event occurred on January 6, 2000 at approximately midnight, plaintiff Kenneth Jean was lawfully operating his motor vehicle on Route 101 North in Ashburnham, Massachusetts, when he was stopped and arrested, without warrant or probable cause, by Ashburnham Patrolman Todd C. Parsons, and arrested charged with failing to display a registration sticker, a marked lane violation, and operating under the influence of liquor.

15. Plaintiff Kenneth Jean was taken to the Ashburnham Police Station where he was booked and handcuffed to a bar on the wall in the booking station without being provided a chair to sit on for hours. Repeated requests to use the bathroom were ignored by various Ashburnham Police Officers. The plaintiff was permitted, after a length of time, to use the phone to call someone to bail him out. After he posted the bail fee, the police still refused to allow plaintiff Kenneth Jean to leave, claiming he did not have a ride. Plaintiff Kenneth Jean remained in the custody of the police, until he was brought to court the next morning, despite having posted bail.

-4-

16. Mr. Jean was transported to the Winchendon Police Department shortly afterwards, at which time he was finally allowed to use the bathroom. In the morning, Mr. Jean was transported back to the Ashburnham Police Department where he was again handcuffed to a bar in the booking area.

17. Mr. Jean was found not guilty on all charges after a jury trial in the Fitchburg District Court.

18. The third incident occurred on November 29, 2000, when two defendant Winchendon police officers approached plaintiff Pamela Jean, who was parked by the side of the road in Winchendon. The defendant officers arrested plaintiff Pamela Jean without probable cause or lawful reason, took her into custody. The defendants held plaintiff Pamela Jean in "protective custody" for several hours, where they and other male officers from the Winchendon Police Department harassed, belittled, taunted and intimidated plaintiff Pamela Jean.

19. After plaintiff Kenneth Jean was found not guilty on all of the charges stemming from his January 6, 2000 arrest, the Fitchburg District Court vacated the 209A restraining order, plaintiff Kenneth Jean was entitled to the return of his FID card and firearm.

20. Plaintiff Murray has refused to return plaintiff Kenneth Jean's FID card and shotgun, despite repeated demands by Mr. Jean.

21. Even after the Fitchburg District Court Judge ordered the FID card and shotgun returned to Kenneth Jean, upon Mr. Jean's appeal, defendant Murray still refused to return Mr. Jean's FID card and shotgun, contemporarily ignoring the ruling of the Fitchburg District Court.

22. On March 23, 2001, defendant Anair stopped and arrested Pamela Jean, the second time, without a warrant, probable cause or other basis.

23. The defendants handcuffed plaintiff Pamela Jean to a wall in the Ashburnham Police station where they teased and harassed her. No female officers or matrons were present at any point while the male defendants held and searched plaintiff Pamela Jean. The defendants grabbed plaintiff Pamela Jean's drivers license from her handbag, and one defendant, holding her license, began chanting "I get to cut your license!" over and over while dangling it in front of her. Despite plaintiff Pamela Jean's repeated requests to the other defendants that they stop this harassment, no defendant took any action to stop the harassment.

24. The defendant charged plaintiff Pamela Jean with operating under the influence, two counts of assaulting and battering a Police Officer, and assault and battery with a dangerous weapon on a Police Officer.

25. Plaintiff Pamela Jean was found not guilty on all charges by a jury in the Winchendon District Court on December 19, 2001.

26. In May of 2001 defendants Brennon and Parsons intentionally trespassing, on the plaintiffs' land, snuck up on the plaintiffs, who were in their jacuzzi in the back yard of their house.

27. Neither defendant had a warrant, probable cause, or any exigent circumstances that would have authorized their trespass on Mr. Jean's property.

28. The two defendants threatened the plaintiffs that if the defendants Ashburnham Police can ever document "naked bathing", the defendant police officers would file charges against the plaintiffs as sex offenders.

-6-

29. On May 23, 2001 plaintiff Mrs. Jean was standing on the sidewalk speaking with Mr. Jean on a pay phone in Winchendon, Massachusetts. Mrs. Jean was approached by two Winchendon police officers, Kevin E. Wolski and William P. Geoffroy. When they approached her, she told them "I am fine and do not want to speak to you".

30. Defendants Wolski and Geoffroy stopped and arrested plaintiff Pamela Jean, for the third time, without a warrant, probable cause or any basis.

31. While at the station, the defendant officers taunted the plaintiff, as had become their practice, telling her that there is no way that she would be released that night and that she would be sent to the Framingham Women's Prison for the night.

32. The defendants charged plaintiff Pamela Jean with resisting arrest, three counts of disorderly conduct, and driving under the influence.

33. The driving under the influence charge was dismissed by the Winchendon Police and re-filed by the Ashburnham Police, who never prosecuted the charge.

34. During the May 23, 2001 incident, the defendants listed plaintiff Pamela Jean's occupation as prostitute for no reason other than to harass and humiliate her.

35. Upon hearing, the Winchendon District Court determined that the defendant had seized the plaintiff without legal justification and ordered all charges against her dismissed.

36. On December 14, 2001 sparks from the fireplace ignited a Christmas tree and set Mr. and Mrs. Jean's home ablaze. Defendants Brennon, Ahearn, and Hart arrived at the scene shortly after the blaze began. Mr. and Mrs. Jean were visibly upset and were concerned for the safety of their cats who were still in the burning building. Mr. Jean had already re-entered the burning home in an attempt to retrieve the cats. Mr. Jean was yelling the names of

-7-

his cats and attempted to go into the back yard. At that point the Police Officers suddenly and without warning or cause began to wrestle Mr. Jean onto the ground. The officers sprayed Mr. Jean in the face with pepper spray. Both Mr. and Mrs. Jean were restrained, assaulted, battered, and arrested by Sargent Brennon, Patrolman Ahearn, and Patrolman Hart.

37. The defendant transported the plaintiffs to the Ashburnham Police Department. Once there, Mr. and Mrs. Jean were put in separate cells. Mr. Jean was dressed only in wet sweat pants and Mrs. Jean was dressed only in a skimpy nightgown that was wet and ripped. At no time did the Ashburnham Police Officers offer either Mr. or Mrs. Jean any dry clothes, despite the fact that it was a chilly December night. Mrs. Jean was frisked inappropriately by a number of male Officers once she arrived at the Police Station. Mr. and Mrs. Jean were held overnight in the Ashburnham Police station in their soaking wet clothes, at obvious risk to their health. While Mr. and Mrs. Jean were in custody they were subjected to repeated harassment by the members of the Ashburnham Police Department, similar to what has been described above and has by this time become an ongoing pattern of harassment.

38. The Ashburnham Police refused to provide any information in response to the repeated calls from the family and friends of Mr. and Mrs. Jean other than that they were holding Mr. and Mrs. Jean on five-thousand (5000) dollars cash bail, no bond. Mr. and Mrs. Jean were not bailed out until the morning of December 15, 2001. Mr. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, making threats to kill, and resisting arrest. Mrs. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, and resisting arrest. Mr. and Mrs. Jean were found not guilty on all these charges in a jury trial at the Winchendon District Court.

## STATEMENT OF CLAIMS

### COUNT I

### FALSE IMPRISONMENT

39. Plaintiffs repeats and realleges each of the preceding paragraphs. The defendants caused the false imprisonment of the plaintiffs.

40. As a direct and proximate result of the acts of the defendants, the plaintiffs were deprived of their liberty, were caused great emotional distress, were subject to great humiliation and suffered other damages.

### COUNT II

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiffs repeats and realleges each of the preceding paragraphs.

42. The individual defendants' conduct, as set forth above, was outrageous beyond the bounds of human decency and beyond that which a civilized society would tolerate, and the defendants knew or should have known that said conduct would inflict severe emotional distress upon the plaintiffs.

43. Plaintiffs in fact suffered physical manifestations of mental and emotional distress and other damages as a result of the outrageous conduct of the individual defendants.

### COUNT III

### VIOLATION OF 42 U.S.C. SECTION 1983 – DEFENDANTS WOLSKI, GEOFFROY, AHEARN, HART, BRENNON, ANAIR, AND PARSONS

44. Plaintiff repeats and realleges each of the preceding paragraphs.

45. The individual police officer defendants, in performing the above intentional torts, violated plaintiff's federal civil rights, including but not limited to the right against unreasonable searches and seizures, the right to due process of the law, the right of free speech, the right to be free from unlawful arrest and prosecution without probable cause, and the right to security of the person.

46. As a direct and proximate result of the individual police officer defendants' acts, the plaintiffs suffered physical injury and pain and suffering, suffered great anxiety and strain, were caused great emotional distress, were subject to great humiliation and suffered other damages.

## COUNT IV

## VIOLATION OF MASS. CIVIL RIGHTS ACT

## VIOLATIONS OF CIVIL RIGHTS BY THREATS, INTIMIDATION OR COERCION

47. Plaintiff repeats and realleges each of the preceding paragraphs.

48. By accusing, detaining and falsely imprisoning the plaintiffs on multiple occasions, the defendants violated the plaintiffs' civil rights as guaranteed by the United States Constitution and the Massachusetts Declaration of Rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to due process of the law, the right of free speech, the right to be free from unlawful arrest and prosecution without probable case, and the right to security of the person, causing damage for which the plaintiff is entitled to recover.

49. Said conduct by each of the defendants constitutes violation of civil rights by threats, intimidation or coercion.

50. As a direct and proximate result of these acts, plaintiffs were deprived of their liberty, were caused great emotional distress and monetary damages, were subject to great humiliation and suffered other damages.

## COUNT V

### MALICIOUS PROSECUTION

51.  Plaintiffs repeats and realleges each of the preceding paragraphs.

52.  Each of the individual defendants swore out a criminal complaint or otherwise participated in the prosecution of the plaintiffs or conspired to further the prosecution of the plaintiffs in the above referenced criminal actions and they each did so without probable cause and with malice.

53.  Said malicious prosecution by the individual defendant police officers caused plaintiff Kenneth and Pamela Price Jean severe damage, including but not limited to economic loss, including significant attorneys fees and lost time from work, personal shame, degradation, humiliation, loss of standing in the community and emotional distress.

54.  As a direct and proximate result of these acts, the plaintiffs were caused great emotional distress, humiliation, monetary damages and suffered other damages.

## COUNT VI

### ABUSE OF PROCESS

55.  Plaintiffs repeats and realleges each of the preceding paragraphs.

56.  By participating in the institution of the criminal prosecution of the plaintiffs, each of the individual defendants employed or conspired to employ legal process for a purpose for which it was not intended, to wit, to retaliate and harass Plaintiffs Kenneth and Pamela Price Jean.

57.  Said abuse of process by the individual defendant police officers caused plaintiffs Kenneth and Pamela Price Jean severe damage, including but not limited to economic loss, including significant attorneys fees and lost time from work, personal shame, degradation, humiliation and emotional distress.

-11-

58. As a direct and proximate result of these acts, the plaintiffs were caused physical damages, great emotional distress, monetary damages and suffered other damages.

## COUNT VII

## CONSPIRACY

59. Plaintiffs repeats and realleges each of the preceding paragraphs.

60. The individual defendants each participated in a joint venture and conspired or participated in a conspiracy to deprive the plaintiffs of their freedom and of other civil rights.

61. As a direct and proximate result of this conspiracy, in which each of the defendants participated, the plaintiffs were caused physical damages, great emotional distress, monetary damages and suffered other damages.

## COUNT IX

## VIOLATION OF 42 U.S.C. SECTION 1983 – MUNICIPAL DEFENDANTS

62. Plaintiff repeats and realleges each of the preceding paragraphs.

63. The defendant Towns of Ashburnham and Winchendon and their Police Chiefs, Murry and Harrington maintained a policy or custom of failing to reasonably train and supervise its police officers. Defendant Towns of Ashburnham and Winchendon and their Police Chiefs Murry and Harrington also maintained a policy or custom of failing to adequately investigate Towns of Ashburnham and Winchendon Police Officers accused of misconduct.

64. Said policies and customs evidenced a deliberate indifference on the part of the City and Chiefs Murry and Harrington to the Constitutional rights of Kenneth and Pamela Price Jean and others. Said policies and customs specifically include the failure to adopt and implement reasonable procedures to prevent abuse of police authority, including the failure to adopt and implement reasonable Internal Affairs Department procedures for the investigation and

-12-

disciplining of Ashburnham and Winchendon police officers. These failures delivered a message to the individual defendant police officers herein that there would be no departmental sanctions for engaging in misconduct.

65. Defendants' official policy or custom proximately caused the plaintiffs' injury and damage.

COUNT XI

DEFAMATION OF CHARACTER

66. Plaintiff repeats and realleges each of the preceding paragraphs.

67. The defendant Winchendon police officers Kevin Wolski and William Geoffroy listed Mrs. Jean's occupation as prostitute in their police report from May 24, 2001 maliciously and without cause.

68. The defendants knew this statement to be false or utterly disregarded whether the statement was true or not because no officer investigated or had reason to believe that Mrs. Jean was, in fact, a prostitute.

69. The defendants wrote this statement into the report solely to further humiliate and slander Mrs. Jean.

70. This false statement negatively effected Mrs. Jean's reputation and as a result she suffered pain, anguish, and humiliation.

WHEREFORE, the plaintiffs requests that this court grant them judgment against each of the defendants, jointly and severally, on each count for which they may be liable, in such amount as is reasonable and just, plus such cost, attorneys fees, punitive damages and interest as they are entitled by law.

**PLAINTIFF HEREBY INVOKES HIS RIGHT TO TRIAL BY JURY.**

Respectfully submitted,
Kenneth and Pamela Price Jean,
by their counsel,

Date: _11/06/03_

Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904

jean\complaint

-14-

## VERIFICATION OF COMPLAINT

    I have read each of the allegations set forth in the complaint herein and attest and verify the truth of each allegation.  Signed and sworn under pains and penalties of perjury this _____10ᵗʰ_____ day of ___November___, 2003.

_____
Kenneth Jean


    I have read each of the allegations set forth in the complaint herein and attest and verify the truth of each allegation.  Signed and sworn under pains and penalties of perjury this __10ᵗʰ__ day of ___November___, 2003.

_____
Pamela Price Jean

jean\complaint

-15-