UNITED STATES DISTRICT COURT FILED OFFICE
DISTRICT OF MASSACHUSETTS

```
*******************************************
```
KENNETH AND PAMELA PRICE JEAN      *

           *

       Plaintiffs              *

           *

v.                        *

           *

TOWN OF ASHBURNHAM POLICE        *

DEPARTMENT, TOWN OF WINCHENDON   *

POLICE DEPARTMENT, ROB HARRINGTON,   *

in his capacity as CHIEF OF THE WINCHENDON *   **C.A. NO. 03-12306MLW**

POLICE DEPARTMENT, JACK MURRY, in his   *

capacity as CHIEF OF THE ASHBURNHAM   *

POLICE DEPARTMENT, TODD C. PARSONS   *

RAYMOND M. ANAIR, ROBERT BRENNAN,   *

WILLIAM P. GEOFFROY, BRIAN HART,   *

KEVIN AHEARN, KEVIN E. WOLSKI   *

OFFICER JOHN DOE, OFFICER JOHN POE.   *

           *

       Defendants            *
```
*******************************************
```

## SECOND AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is an action against officers of the Town of Ashburnham and the Town of

Winchendon police departments for civil rights and other violations causing loss and damage to

the Plaintiffs, Kenneth Jean and Pamela Price Jean, arising out of the unlawful detention, assault

and battery, and arrest and prosecution of the Plaintiffs on various occasions without probable

cause, in a series of incidents that began in the summer of 1999. Defendant Officers Todd C.

Parsons, Raymond M. Anair, Robert Brennan, William P. Geoffroy, Brian Hart, Kevin Ahearn,

Kevin E. Wolski, and two currently unidentified officers from the Ashburnham Police

Department violated the state and federal civil rights of the Plaintiffs by arresting the Plaintiffs

without probable cause multiple times, by maliciously prosecuting the Plaintiffs without probable cause, and by otherwise tortiously injuring the Plaintiffs.

The claims against the Towns of Ashburnham and Winchendon and their Chiefs of Police arises from the failure to train, supervise and discipline their officers, defendants Parsons, Anair, Brennan, Hart, Ahearn, Wolski, Geoffroy and two currently unidentified officers adequately, thereby giving them the message that they could misuse their authority as police officers and that such conduct would be tolerated or ignored by the defendant Police Departments.

## PARTIES

1. The Plaintiffs, Kenneth and Pamela Price Jean, are individuals with a usual residence in Ashburnham, Worcester County, Massachusetts entitled to protections of the United States Constitution and the Massachusetts Declaration of Rights.

2. Defendant Town of Ashburnham Police Department is a department of the Town of Ashburnham, a municipality located in the County of Worcester in the Commonwealth of Massachusetts, and is the employer of defendants Parsons, Brennan, Hart and Ahearn.

3. Defendant Jack Murry was a duly appointed Chief of Police of the Town of Ashburnham Police Department acting under color of law at all times relevant hereto, and is named in his individual and official capacity.

4. Defendant Kevin Ahearn was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto, and is named in his individual and official capacities.

5. Defendant Brian Hart was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto, and is named in his individual and official

-2-

capacities.

6. Defendant Robert Brennan was a duly appointed and acting Sargent of the Ashburnham Police Department at all times relevant hereto, and is named in his individual and official capacities.

7. Defendant Todd Parsons was a duly appointed and acting officer of the Ashburnham Police Department at all times relevant hereto, and is named in his individual and official capacities.

8. Defendant Town of Winchendon Police Department is a department of the Town of Winchendon, a municipality located in the County of Worcester in the Commonwealth of Massachusetts, and is the employer of defendants Wolski, Anair and Geoffroy.

9. Defendant Rob Harrington was a duly appointed Chief of Police of the Town of Winchendon Police Department acting under color of law at all times relevant hereto and is named in his official capacity.

10. Defendant Raymond M. Anair was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto, and is named in his individual and official capacities.

11. Defendant Kevin E. Wolski was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto and is named in his individual and official capacities.

12. Defendant William P. Geoffroy was a duly appointed and acting officer of the Winchendon Police Department at all times relevant hereto and is named in his individual and official capacities.

## STATEMENTS OF FACTS

13. The individual defendants have engaged in a pattern of harassment that has included invading the plaintiff's home without a warrant or probable cause to do so; stopping the Plaintiffs on various occasions, some of which led to arrests and the bringing of false or unsubstantiated criminal charges; the taunting and teasing of the Plaintiffs while they have been held as a result of these false arrests; the violation of normal bail and release procedures in order to extend the time that the Plaintiffs have been held as a result of the unlawful arrests and similar acts in violation of the Plaintiffs' civil rights.

14. This course of conduct began in the summer of 1999, when two currently unidentified Officers from the Ashburnham Police Department illegally entered and searched without consent the home of the Plaintiff Ken Jean, purportedly under the guise of serving a restraining order upon said Plaintiff. Although said Plaintiff is a long time stable resident of Ashburnham, who owns and has owned his own home for many years, and operates and has operated a local business for years, the restraining order was served, unnecessarily, by rousing the Plaintiff from bed at one a.m. Over the objections of said Plaintiff and an unidentified younger officer at the scene, the senior officer forced his way into the Plaintiffs' home and searched it, without a warrant or any probable cause, finding a small amount of marijuana.

15. Since that event Kenneth Jean has been arrested at least three times and charged with crimes at least three times, on January 6, 2000, December 14, 2001 and April 27, 2002.

16. Kenneth Jean been acquitted or found not guilty on each occasion he defended himself, but only after incurring the risk of criminal jeopardy and substantial legal fees and other costs.

17. Plaintiff Pamela Jean has been stopped by the defendants at least four times, on November 29, 2000, March 23, 2001, May 23, 2001 and December 14, 2001, and falsely and maliciously charged with crimes at least three times, on March 23, 2001, May 23, 2001 and December 14, 2001.

18. On each occasion that she has been charged with crimes, plaintiff Pamela Jean has been acquitted or found not guilty, or had the charges against her dismissed, but only after incurring the risk of criminal jeopardy and substantial legal fees and other costs.

19. While being held in custody on January 6, 2000 Kenneth Jean was handcuffed to a bar on the desk in the booking station without being provided a chair to sit on for hours, deprived of an opportunity for a prolonged period of time to use the bathroom , and not allowed to use the phone for an unreasonable amount of time to call someone to bail him out. After he posted the bail fee, the police still refused to allow him to leave, and thus he remained in the custody until he was brought to court the next morning.

20. After Kenneth Jean was found not guilty on all of the charges stemming from his January 6, 2000 arrest and a G.L. c. 209A order was vacated, said Plaintiff was entitled to the return of his FID card and firearm. Despite repeated demands by Mr. Jean and a ruling of the Gardner District Court, Defendant Murry has refused and continues to refuse to return Mr. Jean's property to him.

21. In May of 2001, without a warrant, and absent probable cause, or any exigent circumstances, Defendants Brennan and Parsons trespassed on the Plaintiffs' property, snuck up on the Plaintiffs while they were in their jacuzzi in the back yard of their house, and threatened the Plaintiffs that the Defendant Ashburnham Police would file "naked bathing" charges against

the plaintiffs and brand them as sex offenders.

22. On December 14, 2001 Plaintiffs' home caught on fire. While Mrs. Jean re-entered the home and Mr. Jean attempted to enter his back yard to rescue their cats, Defendants Brennan, Ahearn and Hart wrestled Mr. Jean to the ground and sprayed him in the face with pepper spray, and assaulted and battered Mrs. Jean, following which said Defendants arrested both Plaintiffs.

23. While they were being held overnight in custody on December 14, 2001 Plaintiffs were put in separate cells, harassed, and not provided dry clothing which they required. Furthermore, while they were being held, the police refused to provide any information in response to the repeated calls from the family and friends of Plaintiffs other than that they were holding the plaintiffs on five-thousand dollars ($5,000) cash bail, no bond.

24. During the course of being held in custody on March 23, 2001 Ms. Jean was mocked by the defendant officers who held her driver's license in front of her and argued over who gets to cut it up, was repeatedly searched by multiple male officers without any females present, was threatened with being sent to Framingham women's prison, was left handcuffed to a bar in the booking station for hours, and was not allowed to use a toilet for hours. When she was allowed to use the toilet, she was been forced to do so in view of the defendant police officers who watched, gawked, mocked and laughed at her. During the course of being held in custody on May 23, 2001, Mrs. Jean was defamed and demeaned by being falsely called a "prostitute" in public records and by other actions of the police.

25. Cumulatively, this pattern of conduct by the defendants amounts to a deliberate and willful ongoing conspiracy to violate various constitutional rights of the Plaintiffs. These rights include the right to be free from unlawful search and seizure, the right not to be punished except

-6-

by due process of law, the right to liberty, the right to bear arms, and the right to be secure in one's person.

26. Plaintiffs have been damaged severely and continue to suffer damages, monetary and otherwise, as a direct and proximate result of the constitutionally violative conduct of the defendants, acting in concert and conspiracy to deprive the Plaintiffs of their Constitutionally guaranteed rights as Americans and citizens of the Commonwealth of Massachusetts

## STATEMENT OF CLAIMS

### COUNT I
### FALSE IMPRISONMENT

27. Plaintiffs repeat and re-allege each of the preceding paragraphs.

28. The defendants caused the false imprisonment of the Plaintiffs.

29. As a direct and proximate result of the acts of the defendants, the Plaintiffs were deprived of their liberty, were caused great emotional distress, were subject to great humiliation and suffered other damages.

### COUNT II
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30. Plaintiffs repeat and re-allege each of the preceding paragraphs.

31. The individual defendants' conduct, as set forth above, was outrageous beyond the bounds of human decency and beyond that which a civilized society would tolerate, and the defendants knew or should have known that said conduct would inflict severe emotional distress upon the Plaintiffs.

32. Plaintiffs in fact suffered physical manifestations of mental and emotional distress and other damages as a result of the outrageous conduct of the individual defendants.

## COUNT III
## VIOLATION OF 42 U.S.C. SECTION 1983 – DEFENDANTS
## WOLSKI, GEOFFROY, AHEARN, HART, BRENNAN, ANAIR, AND PARSONS

33.  Plaintiffs repeat and re-allege each of the preceding paragraphs.

34.  The individual police officer defendants, in performing the above intentional torts, violated plaintiff's federal civil rights, including, but not limited to, the right against unreasonable searches and seizures, the right to due process of the law, the right of free speech, the right to be free from unlawful arrest and prosecution without probable cause, and the right to security of the person.

35.  As a direct and proximate result of the individual police officer defendants' acts, the Plaintiffs suffered physical injury and pain and suffering, suffered great anxiety and strain, were caused great emotional distress, were subject to great humiliation and suffered other damages.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS BY THREATS, INTIMIDATION OR COERCION

36.  Plaintiff repeat and re-allege each of the preceding paragraphs.

37.  By accusing, detaining and falsely imprisoning the Plaintiffs on multiple occasions, the defendants violated the Plaintiffs' civil rights as guaranteed by the United States Constitution and the Massachusetts Declaration of Rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to due process of the law, the right of free speech, the right to be free from unlawful arrest and prosecution without probable case, and the right to security of the person, causing damage for which the Plaintiffs are entitled to recover.

38.  Said conduct by each of the defendants constitutes violation of civil rights by threats, intimidation or coercion.

-8-

39. As a direct and proximate result of these acts, Plaintiffs were deprived of their liberty, were caused great emotional distress and monetary damages, were subject to great humiliation and suffered other damages.

## COUNT V
## MALICIOUS PROSECUTION

40. Plaintiffs repeat and re-allege each of the preceding paragraphs.

41. Each of the individual defendants swore out a criminal complaint or otherwise participated in the prosecution of the Plaintiffs or conspired to further the prosecution of the Plaintiffs in the above referenced criminal actions and they each did so without probable cause and with malice.

42. Said malicious prosecution by the individual defendant police officers caused Kenneth and Pamela Price Jean severe damage, including, but not limited to, economic loss, including significant attorneys fees and lost time from work, personal shame, degradation, humiliation, loss of standing in the community and emotional distress.

43. As a direct and proximate result of these acts, the Plaintiffs were caused great emotional distress, humiliation, monetary damages and suffered other damages.

## COUNT VI
## ABUSE OF PROCESS

44. Plaintiffs repeats and realleges each of the preceding paragraphs.

45. By participating in the institution of the criminal prosecution of the Plaintiffs, each of the individual defendants employed or conspired to employ legal process for a purpose for which it was not intended, to wit, to retaliate and harass Kenneth and Pamela Price Jean.

46. Said abuse of process by the individual defendant police officers caused Kenneth and Pamela Price Jean severe damage, including, but not limited to, economic loss, including

significant attorneys fees and lost time from work, personal shame, degradation, humiliation and emotional distress.

47. As a direct and proximate result of these acts, the Plaintiffs were caused physical damages, great emotional distress, monetary damages and suffered other damages.

## COUNT VII
## CONSPIRACY

48. Plaintiffs repeat and re-allege each of the preceding paragraphs.

49. The individual defendants each participated in a joint venture and conspired or participated in a conspiracy to deprive the Plaintiffs of their freedom and of other civil rights.

50. As a direct and proximate result of this conspiracy, in which each of the defendants participated, the Plaintiffs were caused physical damages, great emotional distress, monetary damages and suffered other damages.

## COUNT VIII
## DEFAMATION

51. Plaintiffs repeat and re-allege each of the preceding paragraphs.

52. The defendant Winchendon police officers Kevin Wolski and William Geoffroy deliberately, falsely and maliciously defamed plaintiff Pamela Jean by publishing, on May 24, 2001 and on other occasions, in public records that plaintiff Pamela Jean was a prostitute and did so maliciously and without cause.

53. The defendants knew this statement to be false or utterly disregarded whether the statement was true or not because no officer investigated or had reason to believe that Mrs. Jean was, in fact, a prostitute.

54. The defendants wrote this statement into the report solely to further humiliate and slander Mrs. Jean.

55. This false statement negatively effected Mrs. Jean's reputation and as a result she suffered pain, anguish, and humiliation.

## COUNT IX
## VIOLATION OF 42 U.S.C. SECTION 1983 – MUNICIPAL DEFENDANTS

56. Plaintiff repeat and re-allege each of the preceding paragraphs.

57. The defendant Towns of Ashburnham and Winchendon and their Police Chiefs Murry and Harrington maintained a policy or custom of failing to reasonably train and supervise its police officers. Defendant Towns of Ashburnham and Winchendon and their Police Chiefs Murry and Harrington also maintained a policy or custom of failing to adequately investigate Towns of Ashburnham and Winchendon Police Officers accused of misconduct.

58. Said policies and customs evidenced a deliberate indifference on the part of the Town and Chiefs Murry and Harrington to the Constitutional rights of Kenneth and Pamela Price Jean and others. Said policies and customs specifically include the failure to adopt and implement reasonable procedures to prevent abuse of police authority, including the failure to adopt and implement reasonable Internal Affairs Department procedures for the investigation and disciplining of Ashburnham and Winchendon police officers. These failures delivered a message to the individual defendant police officers herein that there would be no departmental sanctions for engaging in misconduct.

59. Defendants' official policy or custom proximately caused the Plaintiffs' injury and damage.

## COUNT X
## NEGLIGENCE – MUNICIPAL DEFENDANTS

60. Plaintiffs repeat and re-allege each of the preceding paragraphs.

61. The Defendants owed a duty to exercise reasonable care while the Plaintiffs were in

-11-

the Defendants' towns, providing safety and security to the Plaintiffs, which duty was breached by the Defendants, proximately causing Plaintiffs personal injury, loss and damage.

62. At all times pertinent hereto, the individual Defendants were acting within the scope of their employment as police officers of the Town of Winchendon and the Town of Ashburnham.

63. The Towns of Winchendon and Ashburnham, as employers of the individual Defendants are vicariously liable and liable under M.G.L., chapter 258, for the negligent act of their employees.

64. Proper demand was made upon appropriate chief executive officers of Defendant Town of Ashburnham and defendant Town of Winchendon, pursuant to G. L. c. 258, by letter dated October 24, 2003, a copy of which is attached hereto as Exhibit A, and incorporated herein.

65. Defendant Town of Ashburnham and defendant Town of Winchendon never responded to plaintiff Jean's demand.

66. As a direct and proximate result of the Defendants' negligence, each of the Plaintiffs suffered physical injury and pain and suffering, suffered great anxiety and strain, were caused great emotional distress, were subject to great humiliation and suffered monetary and other damages.

## COUNT XI
## NEGLIGENT SUPERVISION – MUNICIPAL DEFENDANTS

67. Plaintiffs repeat and reallege each of the preceding paragraphs.

68. Defendant Town of Ashburnham and defendant Town of Winchendon owed a duty of reasonable care to the Plaintiffs and to others in the Towns of Ashburnham and Winchinendon to train and supervise their police officers and other employees properly and reasonably. As a

-12-

part of this duty, defendant Town of Ashburnham and defendant Town of Winchendon have a duty to investigate allegations of the use of unreasonable or excessive force by Ashburnham and Winchendon police officers and other employees accused of misconduct.

69. Said defendants breached their duty by failing to properly train and supervise the individual defendant police officers. Said failure specifically includes the failure to adopt and implement reasonable procedures to prevent abuse of authority, including the failure to adopt and implement reasonable Internal Affairs Department procedures for the investigation and disciplining of police officers, which failure delivered a message to defendant Parsons and the other individual defendants herein that there would be no departmental sanctions for engaging in misconduct.

70. This breach of duty proximately caused the plaintiff injury and damage.

71. Proper demand was made upon appropriate chief executive officers of defendant Town of Ashburnham and defendant Town of Winchendon, pursuant to G. L. c. 258, by letter dated October 24, 2003, a copy of which is attached hereto as Exhibit A, and incorporated herein.

72. Defendant Town of Ashburnham and defendant Town of Winchendon never responded to plaintiff Jean's demand.

73. As a direct and proximate result, each of the Plaintiffs suffered physical injury and pain and suffering, suffered great anxiety and strain, were caused great emotional distress, were subject to great humiliation and suffered monetary and other damages.

**WHEREFORE**, the Plaintiffs requests that this court grant them judgment against each of the defendants, jointly and severally, on each count for which they may be liable, in such amount as is reasonable and just, plus such cost, attorneys fees, punitive damages and interest as they are entitled by law.

-13-

**PLAINTIFFS HEREBY INVOKE THEIR RIGHT TO TRIAL BY JURY.**

Respectfully submitted,
Kenneth and Pamela Price Jean,
by their counsel,

Date: December 6, 2004

Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904

Mark D. Stern
BBO #479500
MARK D. STERN, P.C.
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax  (617) 776-9250
email:markdsternpc@rcn.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to:

Michael Akerson
Austin M. Joyce
Andrew J. Gambaccini
Edward P. Reardon, P.C.
397 Grove Street
Worcester, MA 01605

Douglas I. Louison
Regina M. Ryan
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

Nancy Frankel Pelletier
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115

John J. Cloherty, III
Pierce, Davis, Perritano, LLP
Ten Winthrop Square
Boston, MA 02110

Andrew M. Fischer
Jason & Fischer
47 Winter Street
Boston, MA 02108

Signed:

Mark D. Stern



EXHIBIT
H

# JASON AND FISCHER

ATTORNEYS AT LAW
47 WINTER STREET
BOSTON, MASSACHUSETTS 02108
TEL. (617)423-7904
FAX. (617)451-3413

LINDA GAYLE JASON
ANDREW M. FISCHER

October 24, 2003

Borton Gould
Chairman, Winchendon Board of Selectman
109 Front Street
Winchendon, MA 01475

James Kreidler
Winchendon Town Manager
109 Front Street
Winchendon, MA 01475

Wesley Landry, Town Clerk
Town of Ashburnham
32 Main Street
Ashburnham, MA 01430

Roy Bourque
Winchendon Chief of Police
15 Pleasant Street
Winchendon, MA 01478

Charles Packard, Chair
Board of Selectmen
Town of Ashburnham
32 Main Street
Ashburnham, MA 01430

Jack Murry
Chief of Police
Town of Ashburnham
12 Memorial Drive
Ashburnham, MA 01430

Re:    Violation of Civil Rights of Mr. Kenneth Jean and Mrs. Pamela Price Jean
       by the Ashburnham and the Winchendon Police

To the above Chief Executive Officers:

   This is a formal demand, brought pursuant to Massachusetts General Laws, chapter 258, on behalf of Mr. Kenneth Jean and his wife Mrs. Pamela Price Jean, whom this office represents. This office has contacted you in your capacity as Executive Officers of the Town of Ashburnham and Winchendon and the employers of Ashburnham and Winchendon Police Officers.

   Mr. and Mrs. Jean's claims arise out of multiple unlawful detentions, assaults, arrests and prosecutions inflicted upon Mr. and Mrs. Jean by various Ashburnham and Winchendon police officers under color of law. Additionally, Mr. and Mrs. Jean claim that the misconduct they suffered was a direct and proximate result of a failure to properly train, discipline, and supervise the officers in question, all of whom are under the control of the towns of Ashburnham and Winchendon. The relevant facts of these incidents are as follows:

Re:    Kenneth and Pamela Price Jean
       Page 2 of 6
       October 24, 2003

1. This ongoing series of events began in the summer of 1999 when two (2) currently unidentified Officers from the Ashburnham Police Department served a restraining order, issued by Sandra Senecal. Although Mr. and Mrs. Jean are stable residents of Ashburnham, who own and have owned their own home for some time and Mr. Jean operates and has operated a local business for years, the restraining order was served, by waking Mr. and Mrs. Jean, unnecessarily, at one (1) a.m. Over the objections of Mr. Jean and the unidentified younger officer at the scene, the senior Officer forced his way into the Jeans' home and searched it, without a warrant or any probable cause, until he "found" a small amount of marijuana. Mr. Jean subsequently pleaded guilty to possession of a class D substance, not wanting to incur the legal fees necessary to have the fruits of the illegal search suppressed and not realizing that this incident the beginning of a pattern of harassment.

2. The second event occurred on January 6, 2000 at approximately midnight, Mr. Jean was returning to his home from a lengthy day of work, lawfully operating his motor vehicle on Route 101 North in Ashburnham, Massachusetts. Mr. Jean was stopped, without warrant or probable cause, by Ashburnham Patrolman Todd C. Parsons. After producing his license and registration for the officer, Mr. Jean was asked to step out of the vehicle, at which time a field sobriety test was performed. Officer Parsons then placed Mr. Jean under arrest for failing to display a registration sticker, a marked lane violation, and operating under the influence of liquor.

3. Officer Parsons took Mr. Jean to the Ashburnham Police Station where he was booked and handcuffed to a bar on the wall in the booking station without being provided a chair to sit on for hours. Repeated requests to use the bathroom were ignored by various Ashburnham Police Officers. Eventually Mr. Jean was allowed to use the phone and he called Donna Shuffelton, his secretary, to come to the Police station and bail him out.

4. Ms. Shuffelton arrived at the Ashburnham Police station at one (1) a.m. and brought thirty (30) dollars in cash for Mr. Jean's bail. However, once the bail commissioner arrived at approximately two (2) a.m., the Police refused to allow Mr. Jean to leave without a ride. As a result, Mr. Jean was forced to remain in the custody of the Police.

5. Mr. Jean was transported to the Winchendon Police Department shortly afterwards, at which time he was finally allowed to use the bathroom. In the morning, Mr. Jean was transported back to the Ashburnham Police Department where he was again handcuffed to a bar in the booking area. Mr. Jean was confronted by Ashburnham Police Chief Jack Murry. After hearing Mr. Jean describe the sadistic treatment he had suffered at the hands of the Ashburnham Police Officers, Chief Murry promised, "I'll talk to them."

6. Later that morning, Mr. Jean was transported to the Fitchburg District Court to be arraigned. In addition to the charges listed above, Mr. Jean also was charged with a probation violation. Mr. Jean was found not guilty on all charges after a jury trial in the Fitchburg District Court.

Re:    Kenneth and Pamela Price Jean
       Page 3 of 6
       October 24, 2003

7. A third incident occurred on November 29, 2000. Mrs. Jean was parked by the side of the road in Winchendon, Massachusetts attempting to get reception on her cell phone, when she was approached by two Winchendon Police Officers. Mrs. Jean was not in distress and was not violating any laws. Mrs. Jean responded to the Officers' inquirers by stating that she was fine and did not require any assistance.

8. After seeing the picture of Mr. Jean on the dashboard of her Dodge Durango, the Officers became confrontational. The two officers ordered Mrs. Jean out of her motor vehicle and, without probable cause or lawful reason, took her into custody. Mrs. Jean was held in "protective custody", where she was harassed and intimidated by these and other male officers from the Winchendon Police Department, without a matron or any female present. Mrs. Jean eventually was released into the custody of a friend, afer being detained for two to three hours without basis or probable cause.

9. When Mr. Jean requested a copy of the report regarding this so called "protective custody" of his wife from the Winchendon Police Department, he was informed that no such report existed. Much later, after complaining to Winchendon Police Chief Rob Harrington, Mr. Jean was given a report for the incident that was dated one month after the incident occurred.

10. After Mr. Jean was found not guilty on all of the charges stemming from his January 6, 2000 arrest, the Fitchburg District Court vacated the 209A restraining order issued on behalf of Sandra Senecal. Now entitled to the return of his FID card and firearm, Mr. Jean attempted to get them back. However repeated attempts by Mr. Jean to retrieve his FID card and his shotgun from the Ashburnham Police were denied. Repeated applications for the return of his FID card have all been denied by Chief Murry, despite the fact that Mr. Jean had appealed his decision to a District Court Judge, who ordered his FID card and his shotgun returned to him. To date Mr. Jean's shotgun is still is the possession of the Ashburnham Police, notwithstanding the ruling of the Fitchburg District Court.

11. The next event occurred on March 23, 2001. Mrs. Jean was traveling along Route 140 in Ashburnham during a snow storm when she was forced to swerve to avoid hitting a dog who was in the road. This is corroborated by a witness to the incident. For this offense Mrs. Jean was arrested and taken into custody by Ashburnham Patrolman Raymond M. Anair because he "suspected" that Mrs. Jean was intoxicated at the time.

12. Mrs. Jean was handcuffed to a wall in the Ashburnham Police station where she was taunted belittled and harassed by members of the Ashburnham Police Department. No female officers or matrons were present at any point while Mrs. Jean was held and searched by the Winchendon Police. One of the officers retrieved Mrs. Jean's drivers license from her handbag, at which time he began chanting "I get to cut your license!" over and over while dangling it in front of her. Despite Mrs. Jean's requests to other officers that they stop the harassment, those unidentified officers took no action to make the harassment stop.

Re:    Kenneth and Pamela Price Jean
       Page 4 of 6
       October 24, 2003

13. Mrs. Jean was charged falsely with operating under the influence, two counts of assaulting and battering a Police Officer, and assault and battery with a dangerous weapon on a Police Officer. Mrs. Jean was found not guilty on all charges by a jury in the Winchendon District Court on December 19, 2001.

14. In May of 2001 Sargent Robert Brennon and Patrolman Todd Parsons of the Ashburnham police department intentionally trespassed on Mr. Jean's land. While Mr. and Mrs. Jean were in the Jacuzzi in the back yard of their house, both Sargent Brennon and the same Patrolman Parsons came onto the Jean property, illegally trespassing, and snuck up on the unsuspecting Mr. and Mrs. Jean. Neither Sargent Brennon nor Patrolman Parsons had a warrant, probable cause, or any exigent circumstances that would have authorised their trespassing on Mr. Jean's property. Sargent Brennon and Patrolman Parsons told Mr. and Mrs. Jean that if the Ashburnham Police can ever document "naked bathing", they would file charges against the Jeans as sex offenders.

15. The next incident occurred on May 23, 2001 Mrs. Jean was standing on the sidewalk speaking with Mr. Jean from a pay phone in Winchendon, Massachusetts. Mrs. Jean was approached by two Winchendon police officers, Kevin E. Wolski and William P. Geoffroy. When they approached her, she told them "I am fine and do not want to speak to you".

16. Officers Wolski and Geoffroy grabbed the pay phone from Mrs. Jean, hung it up, and arrested Mrs. Jean without cause. While at the station, the officers mocked Mrs. Jean, telling her that there is no way that she would be released that night and that she would be sent to the Framingham Women's Prison for the night. In the mean time, the Winchendon Police call Mr. Jean and told him that his wife was currently in protective custody and that he needed to come and collect her.

17. Mrs. Jean was charged with resisting arrest, three counts of disorderly conduct, and driving under the influence, despite the fact that her automobile was in Ashburnham at the time. The driving under the influence charge was dismissed by the Winchendon Police and re-filed by the Ashburnham Police, who never prosecuted the charge. In the Police report for the May 23, 2001 incident, Mrs. Jean's occupation was listed as prostitute for no apparent reason other than to harass and humiliate her. The presiding Judge of the Winchendon District Court held a hearing and determined that Mrs. Jean was seized without legal justification and all ordered all charges against her dismissed.

18. On December 14, 2001 sparks from the fireplace ignited a Christmas tree and set Mr. and Mrs. Jean's home ablaze. Ashburnham Sargent Robert Brennon, Patrolman Kevin C. Ahearn, and Patrolman Brian Hart arrived at the scene shortly after the blaze began. Mr. and Mrs. Jean were visibly upset and were concerned for the safety of their pet cats who were still in the burning building. Mr. Jean had already re-entered the burning home in an attempt to retrieve the cats. Mr. Jean was yelling the names of his cats and attempted to go into the back yard. At that point the Police Officers suddenly and without warning or cause began to wrestle Mr. Jean onto the ground. The officers sprayed Mr. Jean in the face with pepper spray. Both Mr. and Mrs. Jean were restrained, assaulted, battered, and arrested by Sargent Brennon, Patrolman Ahearn, and Patrolman Hart.

Re:    Kenneth and Pamela Price Jean
       Page 5 of 6
       October 24, 2003

19. Both Mr. and Mrs Jean were then transported to the Ashburnham Police Department. Once there, Mr. and Mrs. Jean were put in separate cells. Mr. Jean was dressed only in wet sweat pants and Mrs. Jean was dressed only in a skimpy nightgown that was wet and ripped. At no time did the Ashburnham Police Officers offer either Mr. or Mrs. Jean any dry clothes, despite the fact that it was a cold December night. Mrs. Jean was frisked inappropriately by a number of male Officers once she arrived at the Police Station. Mr. and Mrs. Jean were held overnight in the Ashburnham Police station in their soaking wet clothes, at obvious risk to their health. While Mr. and Mrs. Jean were in custody they were subjected to repeated taunting harassment by the members of the Ashburnham Police Department, similar to what has been described above and has by this time become an ongoing pattern of harassment.

20. The Ashburnham Police refused to provide any information in response to the repeated calls from the family and friends of Mr. and Mrs. Jean other than that the police were holding Mr. and Mrs. Jean on five-thousand (5000) dollars cash bail, no bond.

21. Mr. and Mrs. Jean were not bailed out until the morning of December 15, 2001. Mr. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, making threats to kill, and resisting arrest. Mrs. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, and resisting arrest. Mr. and Mrs. Jean were found not guilty on all these charges in a jury trial at the Winchendon District Court.

22. The ongoing harassment of Mr. and Mrs. Jean has become part of a continuing pattern and practice of misconduct on the part of members of the Ashburnham and Winchendon Police Departments. Mr. Jean has made repeated complaints and requests that the offending officers be investigated and disciplined for their conduct, to no avail, as no investigation into these incidents has been conducted.

23. This ongoing pattern and practice of misconduct by officers from the Winchendon and Ashburnham Police Departments have occurred because of the failure on the part of the towns of Winchendon and Ashburnham and their respective police chiefs to respond to the complaints of the Jeans, and others, and properly supervise, train, and discipline the officers under their control. These failures delivered a message to the individual defendant police officers herein that there would be no departmental sanctions for engaging in misconduct. The towns of Ashburnham and Winchendon are liable for their failure to properly train, supervise, and discipline their police officers.

24. As a direct and proximate result of your police officers' actions, Mr. and Mrs. Jean have suffered severe physical pain and injury, extreme and lasting emotional distress, economic damage, injuries to their reputations and other damages.

25. All of the police officers involved were acting in the scope of their employment with the towns of Winchendon and Ashburnham and perpetrated the above described wrongful actions while acting under color of law in their capacity as Police Officers using threats, force, and intimidation.

Re:    Kenneth and Pamela Price Jean
       Page 6 of 6
       October 24, 2003

       26.  Your police officers, while under your direct authority, control, and supervision, have perpetrated and continue to perpetrate this harassment and abuse of Mr. and Mrs. Jean in violation of Mr. and Mrs. Jean's civil rights, as protected by the United States Constitution and the Massachusetts Declaration of Rights.

       As a result of the above-described conduct, Mr. and Mrs. Jean have incurred significant physical injury, significant economic damages, damage to their reputation, wrongful loss of liberty, and other damages.  This office herein makes formal demand for One Million Dollars ($1,000,000.00) in settlement of Mr. and Mrs. Jean's claims.  Unless that sum is tendered, or a reasonable offer of settlement is made, within the statutorily mandated time period, this office will deem the claim to be denied and proceed to file suit on behalf of Mr. and Mrs. Jean.

       We therefore further request that you instigate a proper internal affairs investigation regarding these allegations and properly discipline the Officers for their wrongful conduct.

       Awaiting your reply, I remain,

                                          Very truly yours,

                                          Andrew M. Fischer

AMF:ajb

jean\258ltr

CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8114
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8121
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8138
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8145
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8152
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8169