UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*********************************
KENNETH AND PAMELA PRICE JEAN          *
         Plaintiffs                    *
                                       *
v.                                     *
                                       *
CITY OF ASHBURNHAM POLICE              *
DEPARTMENT, CITY OF WINCHENDON         *
POLICE DEPARTMENT, ROB HARRINGTON,     *
in his capacity as CHIEF OF THE WINCHENDON  *   C.A. NO. 03-12306MLW
POLICE DEPARTMENT, JACK MURRY, in his  *
capacity as CHIEF OF THE ASHBURNHAM    *
POLICE DEPARTMENT, TODD C. PARSONS     *
RAYMOND M. ANAIR, ROBERT BRENNON,      *
WILLIAM P. GEOFFROY, BRIAN HART,       *
KEVIN AHEARN, KEVIN E. WOLSKI          *
OFFICER JOHN DOE, OFFICER JOHN POE.    *
         Defendants                    *
*********************************
```

## PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiff Pamela Jean moves for reconsideration of the Order of the Court that all depositions of active Police Officers from Ashburnham and Winchendon be taken in Worcester County in that it is burdensome and not well considered. Plaintiff also seeks reconsideration in light of the new information provided below.

In support of this motion Plaintiff says the following:

1.    It was not well considered to address the deposition location aspect of Defendants' request as an emergency motion, thereby depriving the Plaintiffs of the opportunity to prepare an opposition and be fully heard thereupon. Had Plaintiffs been

1

fully heard thereon, they respectfully suggest that aspect of the Motion would have been denied.

2. The motion should not have been allowed without full consideration of the letter opposing said request which was provided to the Court before the motion hearing, but not read and, therefore, not fully/well considered by the Court before the Order issued.

3. The Order has the effect of requiring Plaintiffs to conduct all or nearly all of their depositions in Worcester County since in effect active Police Officers from Ashburnham and Winchendon are most if not all of the persons Plaintiff have to depose. Hence the Order, though apparently limited in scope, is not in fact limited in practice.

4. The Order has the effect of both altering the ordinary rule of the Court, Local Rule 30.1(a), without any sound basis for doing so, and the effect of materially harming the Plaintiffs and/or their Counsel in a number of ways.

5. First, the Order was sought on one basis and one basis only, that each of the twelve police officers scheduled to be deposed would, if deposed in Boston, have to travel what is in effect an additional twenty seven (27) minutes to and from the depositions as opposed to having them conducted in Boston; as a consequence, the Towns assert, in effect, that they would collectively have to pay approximately twelve (12) hours of additional overtime pay.[1] See respectively Motion and see MapQuest

---

[1] Notwithstanding this assertion, it is unclear whether it is entirely or only partially true. Since the majority of these twelve officers are named as individual Defendants, and two more are Chiefs, why, one must ask, would the Town have to pay them anything, much less overtime pay to attend their own depositions. The asserted burden would appear to be one that is being

printouts appended hereto.

6. However, as noted in the letter opposing the motion which the Court did not review in advance of ruling, the impact on the Plaintiffs of the Court's issuing the Order is to require each of their Counsel to travel at a minimum nearly an hour further by car than they would have to travel to depose these officers in Boston. The impact additionally is to, in effect, require them either to depose said witnesses on hostile turf or pay for a space to depose them away from their offices.[2]

7. Second, the Order in effect does nothing more than shift the ordinary financial burden of the litigation from one party to the other, that is, relieve Defendants of the ordinary financial burden under the Rules and Local Rules of Court of defending this case and impose a far greater financial burden on Plaintiffs' prosecuting this action.[3] Ironically, if Plaintiffs prevail on any of their claims for which fee awards are mandated, that far greater cost will be imposed on the Defendants in the long run, and rather than a cost-saving, the Defendant Towns and/or their insurance carriers will incur a substantial financial burden.

---

voluntarily taken on by the Towns, and not the natural consequence of the officers' being deposed in Boston as opposed to Worcester County.

[2] For reasons indicated below, the Plaintiffs are virtually compelled to choose the latter, more costly alternative.

[3] As noted in the letter the Court did not consider before ruling on the motion, the additional cost to the Plaintiffs of having two lawyers travel to take depositions away from their offices is in all probability five times greater than the cost would be to the Defendants to have their officers travel to Boston for the depositions.

3

8.  Third, as noted in letters provided before the hearing to the Court, Defendants' argument as to the cost to the Town is apparently if not entirely disingenuous.[4] In truth, two of four of the Defendants' Counsel attending every deposition have offices in Boston. The cost of having one of these two Counsel travel to Worcester County to attend depositions is hence in fact and on balance just as great or nearly so for Defendants as it is for Plaintiffs, and hence the Defendants and/or their insurance carriers[5] are not achieving an overall cost-savings by the Order, but rather incurring a greater overall financial burden.[6]

9.  Thus, it is revealed, as Plaintiffs contended in Counsel's May 11, 2005 letter to all of the Defendants' Counsel, that the real reason for Defendants' seeking the relief they seek is not to save costs, but rather to impose additional costs or burdens on the

---

[4] The disingenuous character of the reasons asserted in support of the motion was noted by Plaintiff Pamela Jean's Counsel to Defendants' Counsel in his letter of May 11, 2005, on page two thereof, where it was additionally noted that the same Towns [and/or their insurance carriers] asserting the financial burden were sending two attorneys to represent Defendants already represented by another attorney to every deposition, and one of the attorneys being sent was not even able by virtue of his refusal to enter an appearance in the case, even able to participated. Hence, he was being paid hundreds of dollars an hour [by either the Town or its insurance carrier] just to observe and take notes for counsel of record not attending the deposition at a proceeding that was being transcribed verbatim.

[5] While it is true the Towns and there insurance carriers are separate entities, the Court can take notice that costs of insurance are in the long run passed through to consumers, so, one way or another, in the short or long run, the Towns will bear these greater costs.

[6] Plaintiffs say one of two because a third of the Defendants' Counsel, if depositions were taken in Boston, would have to travel to Boston; hence, the apparent net additional cost to Defendants is the cost of one lawyer traveling from Boston to Worcester County. In fact, however, as discussed below, the actual net cost is greater because the lawyer from the City of Worcester will nonetheless have to travel to the deposition if taken in Worcester County.

4

Plaintiffs.

10.  Fourth, and most importantly, this is a case brought, *iinter alia,* under the Civil Rights Act. In the two depositions taken so far and in numerous of the documents produced by the Defendants, Defendants have admitted having subjected the Plaintiff Pamela Jean to bizarre and inexplicable treatment.[7] She alleges and intends to prove that as a consequence she has suffered terrible harm to her emotional health.

11.  It is inappropriate for the Court to impose a burden or engage in what is in effect cost-shifting at a stage of the litigation when neither party has yet prevailed. This is particularly true in a *civil rights* case. The effect of such cost-shifting is to discourage or unduly burden Plaintiffs from exercising their constitutional rights to access the courts and to seek relief under the Civil Rights Act.[8] There will be time enough for cost-shifting when Plaintiffs, after having been permitted to exercise that right, have prevailed wholly or in part in this case.

---

[7] Plaintiff Pamela Jeans references herself and not Kenneth Jean in this point because the only two depositions taken to date have concerned police officers who mistreated her. Plaintiffs will be able to make the same point about Kenneth Jean when provided the opportunity to do so. Plaintiffs, in respect to the Court's direction not to discuss the merits of the case in reference to this motion, will not further elaborate or detail this point, but would be more than happy to document this contention for the Court if invited or permitted to do so.

[8] As noted, this Act provides for post-trial cost shifting in favor of a prevailing plaintiff or plaintiffs. It is hard to imagine that Congress, having legislated this extraordinary remedy, intended to authorize or sanction a Court to impose extraordinary pre-trial, financial burdens on a plaintiff or plaintiffs seeking relief thereunder.

5

12. Fifth and finally, even if pretrial cost-shifting, that is relieving the Towns of the cost of some twelve hours of police officer overtime, which apparently was the intention of the Court, were appropriate, the Order issued will not have much if any of the intended effect. This is because, due to a long-standing medical condition of one of Plaintiffs' Counsel,[9] Plaintiffs will, under the Order of the Court as now constituted, be required to rent space in the corner of Worcester County closest to Boston and conduct depositions there.[10] That locale will in all likelihood be Southborough or Westborough. As such, being a considerable distance from the Defendant Towns, it will result in virtually none or very little of the allegedly-intended cost savings to the Towns, and will

---

[9] Plaintiff's Counsel did not previously raise his long-standing medical condition in discussions with Defendants' Counsel for a number of reasons. First and foremost, because, in light of the Local Rule of the Court and the fact that the Defendants had no expressed no reason for their motion but a plainly specious claim of alleged financial burden he thought their request so patently without merit that the disclosure of his personal and private matters did not appear to be required. Second, because the degree of that condition is presently temporarily far reduced from what it was at its extreme worst point. Plaintiff's Counsel only mentions, but does not detail his condition at this time for these same reasons. He has discussed the condition with Attorney Akerson in conferring on this motion.

[10] If requested or required to do so, Plaintiff's Counsel will advise the Court and/or opposing Counsel more fully as to this matter, and, if requested or required to do so, order medical records from his health care provider which presumably will document in some detail the history and duration of this long standing problem. Plaintiff's Counsel says "presumably" because he has never reviewed and is not presently in possession of such records, and is therefore not aware to what extent the issue of how this condition impacts his driving an automobile for distances in excess of forty five minutes is specifically as opposed to only generally documented therein. He only knows he has raised the matter on numerous occasions over a period of many years with his health care providers, and has received considerable advice and some treatment for the condition from them over a period of time spanning approximately a decade; he does not know to what extent they made note in their records how it impacts this aspect of his life, but represents that he would have described its impact on this aspect of his life as its primary consequence on numerous such occasions.

6

only have the effect of burdening the Plaintiffs in a way not contemplated by either the Civil Rights Act or the applicable Local Rule, and no other effect.

WHEREFORE, Plaintiffs request that the Court determine there is no good cause and/or insufficient good cause for Defendants' request and hence that the portion of its Order requiring Plaintiffs to take depositions in Worcester county rather than in Boston be reconsidered and vacated.

Date: May 16, 2005

Respectfully submitted,
Pamela Price Jean,
by her counsel,

Mark D. Stern
BBO # 4795000
MARK D. STERN, P.C.
34 Liberty Avenue
Somerville, MA 02144
(617) 776 4020
Fax (617) 776 9250
markdsternpc@rcn.com

CERTIFICATE OF SERVICE

I Mark D. Stern hereby certify under the pains and penalties of perjury that on the above date I sent by regular mail, postage pre paid a copy of the foregoing documents to the individual listed below:

Nancy Frankel Pelletier
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115

John J. Cloherty, III
Pierce, Davis, Perritano, LLP
Ten Winthrop Square
Boston, MA 02110

Douglas I. Louison
Regina M. Ryan
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

Michael Akerson
Austin M. Joyce
Andrew J. Gambaccini
Reardon, Joyce & Ackerson, P.C.
397 Grove Street
Worcester, MA 01605

Signed,

Mark D. Stern

**markdsternpc@rcn.com**

**From:** <Afischer@jasonandfischer.com>
**To:** <markdsternpc@rcn.com>
**Sent:** Thursday, May 12, 2005 8:34 AM
**Subject:** drive time Worcester

drive time 63 minutes

From: [1-24] Main St Winchendon, MA 01475 US
To: [1219-1228] Main St Worcester, MA 01603 US

Driving Directions
1. Start out going NORTHEAST on ROSE CT toward RIVER ST/US-202. (0.06 miles)
2. Turn SLIGHT LEFT onto RIVER ST/US-202. Continue to follow US-202. (0.35 miles)
3. Stay STRAIGHT to go onto SPRING ST/MA-12. (2.35 miles)
4. SPRING ST/MA-12 becomes MA-140 S. (9.52 miles)
5. Merge onto MA-2 E toward FITCHBURG/PRINCETON. (11.82 miles)
6. Merge onto I-190 S via EXIT 33 toward LEOMINSTER/WORCESTER. (18.42 miles)
7. Take the RT-12/W. BOYLSTON ST exit- EXIT 1- toward GOLD STAR BLVD. (0.27 miles)
8. Stay STRAIGHT to go onto W BOYLSTON ST/MA-12 S. Continue to follow MA-12 S. (3.88 miles)
9. MA-12 S becomes PARK AVE. (0.23 miles)
10. Turn SLIGHT RIGHT onto MAIN ST/MA-9. (0.26 miles)
11. End at [1219-1228] Main St Worcester, MA 01603 US
Total Estimated Time: 1 hour, 3 minutes
Total Distance: 47.17 miles


To view your driving directions, click on this link:
Driving Directions

: Where to go, how to get there!

**markdsternpc@rcn.com**

**From:** <afischer@jasonandfischer.com>
**To:** <markdsternpc@rcn.com>
**Sent:** Thursday, May 12, 2005 8:37 AM
**Subject:** drive time Boston

one hour thirty minutes --- 27 minutes more

I am on the way to the office. Will call you when I get in (and check whether there are any faxes)

Andy

From: [1-24] Main St Winchendon, MA 01475 US
To: 47 Winter St Boston, MA 02108-4706 US

Driving Directions
1. Start out going NORTHEAST on ROSE CT toward RIVER ST/US-202. (0.06 miles)
2. Turn SLIGHT LEFT onto RIVER ST/US-202. Continue to follow US-202. (0.35 miles)
3. Stay STRAIGHT to go onto SPRING ST/MA-12. (2.35 miles)
4. SPRING ST/MA-12 becomes MA-140 S. (9.52 miles)
5. Merge onto MA-2 E toward FITCHBURG/PRINCETON. (31.09 miles)
6. Enter next roundabout and take 1st exit onto MA-2 E/CONCORD TURNPIKE. (4.51 miles)
7. Turn SLIGHT RIGHT onto CAMBRIDGE TURNPIKE/MA-2 E. Continue to follow MA-2 E. (10.01 miles)
8. Turn SLIGHT LEFT to take the US-3 N/RT-16 E ramp toward MEDFORD. (0.09 miles)
9. Turn SLIGHT LEFT onto ALEWIFE BROOK PKWY/US-3 N/MA-16 E. Continue to follow ALEWIFE BROOK PKWY/MA-16 E. (1.40 miles)
10. Enter next roundabout and take 2nd exit onto MYSTIC VALLEY PKWY/MA-16 E. (1.33 miles)
11. Merge onto I-93 S toward SOMERVILLE/BOSTON. (4.59 miles)
12. Take EXIT 24 A-B toward RT-1A N/LOGAN AIRPORT/GOV'T CTR. (0.17 miles)
13. Take EXIT 24-A toward GOV'T CTR/NORTH END/AQUARIUM/FINANCIAL DISTRICT. (0.16 miles)
14. Turn LEFT onto SURFACE RD. (0.03 miles)
15. Stay STRAIGHT to go onto ATLANTIC AVE. (0.09 miles)
16. Turn RIGHT onto STATE ST. (0.30 miles)
17. STATE ST becomes COURT ST. (0.09 miles)
18. Turn LEFT onto TREMONT ST. (0.21 miles)
19. Turn LEFT onto HAMILTON PL. (0.03 miles)
20. End at 47 Winter St Boston, MA 02108-4706 US
Total Estimated Time: 1 hour, 30 minutes
Total Distance: 66.39 miles

To view your driving directions, click on this link:
Driving Directions

: Where to go, how to get there!

F

# MARK D. STERN, P.C.

34 LIBERTY AVENUE • SOMERVILLE, MA 02144 • (617) 776 4020 • FAX: (617) 776 9250 • email: markdsternpc@rcn.com

May 11, 2005

Nancy Frankel Pelletier
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115

Robert Ludlum for
John J. Cloherty, III
Pierce, Davis, Perritano, LLP
Ten Winthrop Square
Boston, MA 02110

Regina M. Ryan
for herself and Douglas I. Louison
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

Michael Akerson
Andrew J. Gambaccini
for themselves and Austin M. Joyce
Reardon, Joyce & Ackerson, P.C.
397 Grove Street
Worcester, MA 01605

               Re: Jean v. City of Asburnham Police Dept., et al.
                  Docket No. 2003 CV 12306

               By fax transmissions

Dear Counsel:

Be advised that it is my intention to seek Rule 11 relief if you file a motion to compel my clients to take depositions at a location one hour away from either of Plaintiffs' Counsel's Offices. I have practiced law thirty five years and never requested such relief; however, in regard to this request I have conferred with some or all of you on no less than five and as many as seven occasions regarding this demand/request on your parts, and on many of these occasions, if not each such occasion I have requested you cite a single legal authority for a demand that is plainly contrary to the express Rules of Court. On each occasion, I have cited the Rules of Court to you, and your failure to cite any precedent to me.

On each occasion you have failed not only to cite any law/precedent, you have failed to state any but two reasons

First Ms. Pelletier has stated the inconvenience for her to travel all the way to Boston from Springfield. However, it is she who determined to take on a case about Ashburnham and Wichendon police brought by Boston-based Counsel. If Plaintiffs were taking these depositions in Worcester, she would still have to travel there, as would no less than four Boston area based attorneys. I have yet to hear a reason why these four attorneys should have to travel several dozen times to convenience two attorneys who would otherwise have to travel the same (or less additional) distance in the opposite direction. Plainly the only reason is to raise the cost for the Plaintiffs of pursuing this case and nothing more.

The only other reasons anyone has stated has been Ms. Ryan's citing on one occasion the cost to the Town of Ashburnham involved in sending five or six of its police officers a greater distance to attend one deposition each; however, since the Ashburnham Defendants are the ones making this latter assertion, and since they are sending three Counsel, one of whom cannot even participate, to every deposition to represent the same people, this suggestion of cost savings appears to be more than disingenuous.

If you have ever stated any other reasons for your demand/request, I have no present memory of them and have not heard them recently. Hence, I request, if you have any other reasons, that you disclose them in advance of filing your motion.

On the other hand, if you file a motion presenting reasons other than ones that you disclosed in five to seven conferences, I respectfully suggest I will consider you to have failed to confer in good faith.

Cordially,

Mark D. Stern

cc.    Andrew Fischer; Kenneth and Pamela Jean