UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************

KENNETH AND PAMELA PRICE JEAN      *
           Plaintiffs                 *
                                     *
v.                                  *
                                     *
CITY OF ASHBURNHAM POLICE          *
DEPARTMENT, CITY OF WINCHENDON    *
POLICE DEPARTMENT, ROB HARRINGTON,   *
in his capacity as CHIEF OF THE WINCHENDON *.  **C.A. NO. 03-12306MLW**
POLICE DEPARTMENT, JACK MURRY, in his   *
capacity as CHIEF OF THE ASHBURNHAM   *
POLICE DEPARTMENT, TODD C. PARSONS   *
RAYMOND M. ANAIR, ROBERT BRENNON,   *
WILLIAM P. GEOFFROY, BRIAN HART,       *
KEVIN AHEARN, KEVIN E. WOLSKI        *
OFFICER JOHN DOE, OFFICER JOHN POE.   *
           Defendants              *

*********************************************

## MOTION TO STRIKE DEFENDANTS' JOINT OPPOSITION
## TO PLAINTIFFS' MOTIONS FOR RECONSIDERATION

Now come the plaintiffs and move that this Honorable Court strike the defendants' Joint

Opposition to Plaintiffs' Motions for Reconsideration of this Court's Order of May 13, 2005,

pursuant to F.R.C.P., Rule 11, as the defendants' motion is based upon scandalous and false

assertions and thus in violation of F.R.C.P., Rule 11. These false assertions are set forth in a

letter from defense counsel Pelletier dated May 11, 2005, which was attached to the defendants'

initial self styled "emergency" motion for a protective order, filed May 12, 2005, and in the

opposition itself.

The substantially false allegation of the letter, used to justify both the defendants' motion

for protective order and the self proclaimed "emergency", is that plaintiff's counsel concealed the

fact that they possessed transcripts of the trial testimony of some of the defendants, and that

defendants' counsel conferred in advance of filing the motion. This was not true, as is set forth in a letter of opposition sent by plaintiff Pamela Jean's counsel. [Exhibit A, hereto]  Counsel for plaintiff Pamela Jean had only a few hours to prepare this letter before sending it to the Court only an hour before the emergency hearing.  As a consequence, the Court was not able to read the letter before the hearing, denying plaintiffs a chance to correct the false allegation contained in the letter. Counsel for Plaintiff Kenneth Jean had no opportunity to respond to the emergency motion.[1]

The truth is that defendants' counsel were appraised of the existence of the criminal proceedings in question in plaintiffs' initial automatic disclosure, and provided a way to obtain a copy of the transcript thereof nearly two weeks in advance of claiming otherwise in the May 11, 2005 letter and filing the emergency motion immediately thereafter.  Furthermore, contrary to the statements in their opposition, they were invited to confer with Mr. Stern about this matter, and failed or refused to do so.  The salient facts follow:

A.    The first deposition in this case was taken at Attorney Mark Stern's office on May 2, 2005.  Mr. Fischer, who made plaintiffs' automatic disclosure in this case before Mr. Stern took over as counsel for Ms. Jean was not present at the time.  During the deposition defendants' counsel accused plaintiffs of having failed to disclose the existence of a transcript of the witness's apparently inconsistent testimony at a criminal

---

[1] Counsel for plaintiff Kenneth Jean was unable to respond because of the defendants' tactic in submitting their motion (improperly and without basis) as a self styled "emergency motion. Defendants never conferred with plaintiff's counsel before bringing the motion (see Letter of Andrew Fischer, Exhibit A, hereto) and deliberately arranged "service" so that counsel for Kenneth Jean would not receive a copy of the motion before the "emergency" hearing, only mailing it to him, rather than sending a copy by fax or email.

proceeding. Being unfamiliar with the automatic disclosures made before he appeared in the case, Mark Stern assumed defendants' counsel present at the deposition were being forthright about the matter and engaged in a good faith discussion with said counsel which is described below.[2]

B.     Being unaware of the fact that these transcripts had been referenced in the automatic disclosure, when defendants requested that Mr. Stern provide them a copy of the transcript, he explained the issue of the stenographer's copyright to them and they all agreed he would provide them with the stenographer's name, address and phone number, and they would get the transcript from her. He did so immediately, on the record of the deposition, and even marked as Exhibits to the deposition the cover pages of the trial transcripts with the stenographer's name and addresses thereon. (This exhibit was provided to the Court with plaintiff Pamela Jean's filing on May 13, 2005.)

C.     This discussion took place on the record and the issue was, as the transcript reveals, fully resolved a full two weeks in advance of the deposition to be taken on Monday, May 16, 2005. Since the criminal proceedings had already been transcribed, there should have been no difficulty for defendants' counsel to obtain the transcripts in advance of May 16, 2005, the next deposition of an officer who testified at the criminal trial. (This transcript was provided to the Court with the May 13, 2005 submission of Pamela Jean.)

---

[2] He has since learned that the transcripts of the criminal proceeding had in fact been identified in the automatic disclosure, and defendants' counsels' assertions to the contrary were false. See Letter of May 20, 2005 from Attorney Fischer to the Court.

D.  Nine days later, after the close of business on May 11, 2005, Mr. Stern's office was sent a fax of the May 11, 2005 letter which suggested inaccurately that this issue had not been resolved, and falsely asserted that he had made promises that he had failed to keep. In particular the letter accused him of promising to provide Ms. Ryan with the criminal trial transcripts and reneging on that promise. Unbeknownst to him, this letter was not faxed to Mr. Fischer, but only mailed to him, with the apparent intention that he not see the letter until after defendants' counsel blind-sided plaintiffs with an emergency motion.

E.  At this point in time no transcript of the deposition had yet been provided to counsel, so the assertion could not be unequivocally rebutted and, unlikely as it seemed, defendants' counsel could simply have been mistaken in their memory. Assuming the best about defendants' counsel, Mr. Stern presumed they had erroneously remembered what they discussed and decided. He thus invited them in writing by his letter of May 12, 2005 to call him to confer about the matter, at which time he intended to pointed out their error to them and put the matter to rest. (This letter was provided to the Court with the Emergency Motion, but not provided with the present Opposition, though or perhaps because it rebuts the statement to the contrary made in said opposition.)

F.    Rather than confer, they filed an emergency motion without even attempting to call Mr. Stern or Mr. Fischer about this issue,[3] or otherwise to confer, and therein made the same false accusations about their behavior.

G.    Mr. Stern hence ordered an expedited excerpt of the transcript to determine if it demonstrated that the accusations were patently false. The transcript excerpt did precisely that. He then responded by providing the Court with a letter and the transcript excerpt and the deposition exhibit, faxed to the Court only hours before the hearing on the emergency motion. The Court advised him it had not and was not going to look at either the letter or transcript. The emergency motion was allowed.

H.    Thereafter, plaintiffs separately filed motions for reconsideration requesting in effect that the Court not shift the burden of the cost of these proceedings from the defendant towns to two civil rights claimants in direct contravention of the ordinary procedure in the Circuit and in violation of their right to prosecute their claims without extraordinary financial burdens.

I.    This past Friday Defendants submitted a joint opposition to the plaintiffs' motions. Tellingly, they do not address the merits of either motion. Rather, apparently emboldened by that fact that the Court never looked at his letter of May 13, 2005, or the transcript or the correspondence or exhibit appended thereto, defendants' counsel have

---

[3] Defendants' motion spends pages attempting to excuse defendants' failure to confer with opposing counsel, as required by Local Rule 7.1, with the justification that "plaintiff's counsel knew of the dispute over where the depositions were being taken. This avoids the issues which are: (1) opposing counsel had no idea any motion was going to be filed based on the alleged concealment and/or failure to produce transcripts of criminal proceedings; (B) the dispute about the location of depositions did not present any emergency to the Court and was not the basis of defendants' assertion that there was an emergency; (C) while Attorney Fischer may have known of the dispute, that did not excuse failing not only to confer but even to serve opposing counsel with the letter in a manner such that it will be received before it is heard; and (D) while some of defendants' counsel did confer with Mr. Stern about the issue of the location of the depositions, they never conferred with him about filing an emergency motion regarding that matter.

-5-

resubmitted the May 11, 2005 letter with its false accusation to the Court, and rely on
its false statements to oppose plaintiffs' motions.

In resubmitting the May 11, 2005 letter and reasserting these falsehoods, defendants'
counsel do so with full knowledge that the deposition transcript and exhibit, and the May 12,
2005 response of plaintiff Pamela Jean's counsel to their May 11, 2005 letter demonstrate
without any question that they have proffered these statements about plaintiff's counsels'
conduct to the Court with full knowledge that they are false.

On May 13, 2005 plaintiff Pamela Jean's counsel provided each of defendants' counsel
with these transcript excerpts and a second copy of the deposition exhibit.[4] They all therefore
know or should know that the parties had reached an agreement on the record about the
criminal trial transcripts at the May 2, 2005 deposition, and the agreement was entirely
different from what was represented in the May 11, 2005 letter and during the following two
days to the Court. Defense counsel also know that they were invited to confer about this issue
before filing an "emergency" motion. They chose to file an emergency without conferring
about this issue.

Even if the plaintiffs had failed to disclose the existence of transcripts of the underlying
state district court criminal trials, the existence of the defendants' prior testimony was no
surprise to the defendants. They knew that they had testified under oath against the plaintiffs,
and they certainly knew that this testimony was relevant and available to the parties, whether
or not the plaintiff "disclosed" it. But the truth is that, contrary to the scandalous assertions in
the May 11 letter, plaintiffs did alert the defendants to the transcripts. (See Automatic
Disclosure, Exhibit B, hereto.)

---

[4] Since that time each has received the full transcript from the stenographer.

The fact that plaintiff actually provided a copy of one transcript is not evidence that plaintiff "concealed" the existence of the others. To the contrary. Plaintiffs had no obligation to provide any transcripts, only to identify them. By providing a copy of one, plaintiffs certainly put the defendants on notice that the others may be available and relevant. Thus the May 11 letter was false and misleading in suggesting or inferring any type of concealment.

Stripped of the false allegations that plaintiff "concealed" trial tapes that the defendants knew about, and the further assertion that defendants in fact conferred with opposing counsel in advance of filing the emergency motion, the defendants' opposition contains no substantive argument.

WHEREFORE, Plaintiffs Pamela and Kenneth Jean respectfully request that this Honorable Court strike the defendants' Opposition to Plaintiffs' Motions for Reconsideration as scandalous and false and impose appropriate sanctions, pursuant to F.R.C.P., Rule 11.

Date: June 1, 2005

Respectfully submitted,
Kenneth Jean,
by his counsel,

Andrew M. Fischer
BB0# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904
afischer@jasonandfischer.com

Mark D. Stern
BBO #479500
MARK D. STERN, P.C.
34 Liberty Avenue
Somerville, MA 02144
Tel. (617) 776-4020
Fax  (617) 776-9250
email:markdsternpc@rcn.com

## CERTIFICATE OF SERVICE

I Andrew M. Fischer, hereby certify under the pains and penalties of perjury that I served each of the below counsel by faxing a copy on May 31, 2005 and on the above date I sent by regular mail, postage pre paid a copy of the foregoing documents to the individuals listed below:

Nancy Frankel Pelletier
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115

John J. Cloherty, III
Pierce, Davis, Perritano, LLP
Ten Winthrop Square
Boston, MA 02110

Michael Akerson
Austin M. Joyce
Andrew J. Gambaccini
Reardon, Joyce & Ackerson, P.C.
397 Grove Street
Worcester, MA 01605

Douglas l. Louison
Regina M. Ryan
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110

Signed,

Andrew M. Fischer

jean/mtn2strike-1