UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH AND PAMELA PRICE JEAN,<br>    Plaintiffs<br><br>v.<br><br>CITY OF ASHBURNHAM POLICE<br>DEPARTMENT, CITY OF WINCHENDON<br>POLICE DEPARTMENT, ROB HARRINGTON,<br>in his capacity as CHIEF OF THE WINCHENDON<br>POLICE DEPARTMENT, JACK MURRAY, in his<br>capacity as CHIEF OF THE ASHBURNHAM<br>POLICE DEPARTMENT, TODD C. PARSONS,<br>RAYMOND M. ANAIR, ROBERT BRENNON,<br>WILLIAM P. GEOFFROY, BRIAN HART,<br>KEVIN AHEARN, KEVIN E. WOLSKI,<br>OFFICER JOHN DOE, OFFICER JOHN POE,<br>    Defendants | CIVIL ACTION NO. 03-12306-FDS |

**DEFENDANT TOWN OF ASHBURNHAM'S MOTION FOR CRIMINAL OFFENDER
RECORD INFORMATION, CONVICTION DATA, ARREST
REPORTS, AND PROBATION RECORDS OF PLAINTIFF KENNETH JEAN**

Now comes the Defendant Town of Ashburnham and hereby moves this Court for an Order

granting access to Plaintiff Kenneth Jean's adult Criminal Offender Record Information ("CORI"),

including all criminal record information, all conviction data, all arrest reports, and all probation

records. In support of this Motion, Defendant states:

1.     Under Massachusetts law a general grant of access was approved by the Criminal History

        Systems Board that permits attorneys of record in civil litigation to request criminal records

        for the purposes of witness impeachment and/or trial strategy. See Mass. Gen. L. ch. 6 §

        172(c); see also, Schuurman v. Town of North Reading, 139 F.R.D. 276, 277-78 (D.Mass.

        1991) (finding that prior convictions are admissible to impeach any witness, including

plaintiffs testifying on their own behalf and, therefore, discovery of the plaintiff's criminal records is reasonably calculated to lead to the discovery of admissible evidence); see also Mass. Gen. L. ch. 233 § 21 (providing that the credibility of a witness may be impeached by showing that he has been convicted of a crime).

2.      Under the Federal Rules of Evidence, evidence of a prior conviction is admissible for the purpose of attacking the credibility of a witness. See Fed. R. Civ. P. 609.

3.      In this case, Plaintiff asserts various tort claims in his Complaint against the Defendants, as well as three Counts alleging Civil Rights violations. The tort claims are filed against all the individual police officers, with the exception of the last Count alleging defamation of character. The three Civil Rights Counts consist of a claim under the Federal Civil Rights law, 42 U.S.C. §1983, against the individual police officers, a separate claim under §1983 against the municipal defendants, and lastly a claim under the State of Massachusetts Civil Rights Act. See Pl.'s Compl.

4.      The Plaintiff's Complaint centers on his arrests for various charges by the Police Departments of the Towns of Winchendon and Ashburnham. See Pl.'s Compl.

5.      Kenneth Jean, as Plaintiff, is expected to testify at trial and has provided answers to interrogatories propounded by the Defendant Town of Ashburnham.

6.      In his answers to Interrogatories propounded by the Defendant Town of Ashburnham, plaintiff Kenneth Jean acknowledged he had previously served a prison sentence in other jurisdictions. See K. Jean Answer to Interrogatory number 4. (attached hereto as **Exhibit A**).

7.      In order to adequately defend against Plaintiff's allegations, it is vital that Defendant has access to Kenneth Jean's criminal record information, conviction data, arrest reports and

2

Board of Probation records in order to effectively conduct cross-examination at trial.

8.    The due process clause of the Fourteenth Amendment of the United States Constitution and Article XI of the Declaration of Rights to the Massachusetts Constitution (remedies by recourse to the law, to be free, complete and prompt) requires that the Defendant have access to this information.

9.    As reflected in the accompany attorney affidavit, Defendant's counsel certifies the CORI information will only be used for authorized purposes, such as trial strategy and cross examination concerning bias, and/or impeachment purposes, and it will not be disseminated to any unauthorized persons.

WHEREFORE, Defendant Town of Ashburnham respectfully requests that this Court issue an Order granting Defendant access to all of Kenneth Jean's criminal record information, conviction data, arrest reports and Board of Probation records.  A copy of a proposed Order is attached hereto.

Defendant,
TOWN OF ASHBURNHAM,
By its attorneys,

PIERCE, DAVIS & PERRITANO, LLP


_____
John J. Cloherty III, BBO #566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the
above document was served upon each attorney of
record, or pro se litigant by mail/by hand.

7/24/05
Date

3

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
**********************************************

| | |
|---|---|
| KENNETH AND PAMELA PRICE JEAN | * |
| | * |
| Plaintiffs | * |
| | * |
| v. | * |
| | * |
| CITY OF ASHBURNHAM POLICE | * |
| DEPARTMENT, CITY OF WINCHENDON | * |
| POLICE DEPARTMENT, ROB HARRINGTON, | * |
| in his capacity as CHIEF OF THE WINCHENDON | * |
| POLICE DEPARTMENT, JACK MURRY, in his | * |
| capacity as CHIEF OF THE ASHBURNHAM | * |
| POLICE DEPARTMENT, TODD C. PARSONS | * |
| RAYMOND M. ANAIR, ROBERT BRENNON, | * |
| WILLIAM P. GEOFFROY, BRIAN HART, | * |
| KEVIN AHEARN, KEVIN E. WOLSKI | * |
| OFFICER JOHN DOE, OFFICER JOHN POE. | * |
| | * |
| Defendants | * |

**C.A. NO. 03-12306MLW**

**********************************************

### PLAINTIFF, KENNETH JEAN'S ANSWERS TO DEFENDANT, TOWN OF ASHBURNHAM'S FIRST SET OF INTERROGATORIES

1.  State your full name, and the name you customarily use, your residence address and telephone number at the present time, your social security number and your date of birth, place of birth, (City, County and State, or what Country), and the exact name appearing on your birth certificate.

Answer: Kenneth Roger Jean, P.O. Box 237, 141 Ashby Rd., Ashburnham, MA 01430; (978) 827 3344; DOB 03/27/56; Manchester, NH.

2.  List in chronological order the addresses at which yo have resided in the past ten years, indicating the approximate dates at each address, commencing with the present.

Answer: June 1999 Present, 141 Ashby Rd., Ashburnham, MA 01430; February 1988 to June 1999, Winchendon, MA 01475.

3. Please state, in connection with your marital status:

    a.    whether single, married, widowed or divorced;

    b.    if married, give the full name and age of your spouse and date and place of marriage, and last known address of spouse, if separated;

    c.    if you have any children, give the names and ages of your children, and identify who has custody of them;

    d.    if you have ever been married to someone else, other than in your answer to (b) above, list to whom, when and where, for what approximate period of time by dates, and whether the marriage(s) were terminated by death, divorce or annulment.

Answer:

    a.    Married.

    b.    Pamela J. Jean, age 43, Married in Negril, Jamaica.

    c.    N/A

    d.    N/A

4. If you have ever been arrested or convicted for a felony and/or misdemeanor describe the arrest(s) and offense(s) and when and where they occurred, and under what name or names you were arrested or convicted, and when and in what city, county, state and country.

Answer: 4-27-02 DUI by Ashburnham Police, Not guilty verdict in Fitchburg District Court; 12-14-01 Resisting Arrest, assault & battery on a police officer (2), disorderly conduct, threatening to commit a crime, murder (2), All not guilty verdicts in Fitchburg District Court; 1-6-00 (uncertain about exact date) DUI by Ashburnham Police, All not guilty verdicts in Fitchburg District Court; Summer 1999, Possessions of Marijuana by Ashburnham polic. Plead guilty in Fitchburg District Court.

There are other arrests for which I do not recall the dates or specifics. My records were lost in the house fire of 12-14-01. Most of these were before 1989

I was cited in the summer of 2004 for driving without a seatbelt

I received a speeding ticket on the Mass Pike around 1/05

I was cited for interfering with a flight crew around 1998 when I complained about service in first class while returning from vacation in Jamaica. I paid a $50 fine to dispose of the case.

In the summer of 2003, I was cited for interfering with a funeral when I unwittingly passed an unmarked funeral procession. I paid a fine to the Winchendon District Court.

Around 1998 I served 8 months of a one year sentence in the Cheshire County House of Corrections. This was a result of driving after being deemed a habitual offender.

Any other arrests or charges can be found on my CORI, which has been provided in response to the Request for Production of Documents.

5.   Please state whether you have experienced substance abuse problems, including alcohol or drugs, and/or have you ever sought treatment or counseling of any kind for such problems, with ten (10) of the date of the incidents described in your complaint.  If so, describe:

    a.    the nature of the drug or alcohol use;

    b.    the dates or times the problems were experienced; and

    c.    the treatment or counseling received.

Answer:

    a.    I am unaware of ever having a drug or alcohol problem

    b.    I am unaware of ever having a drug or alcohol problem; and

    c.    I have never sought treatment but somewhere around 1992 the State of NH made me go to a substance abuse program.  It was a week program for a habitual offender violation.  I don't recall the specifics and of course have no records because of the house fire.

6.   Please identify by case name, docket number, court or agency, and date all lawsuits or legal actions in which you have been a plaintiff or defendant, as well as the outcome of such lawsuits (i.e. whether pending or concluded by dismissal, settlement, jury trial), and whom (which party(ies)) the outcome favored.

Answer:   The only lawsuits I recall were three lawsuits for collecting receivables owed to my company.  I don't recall losing any of these collections but I rarely got all the money I was owed.

7.   Describe all of the injuries and complaints, of any nature whatsoever [whether objective or subjective], that you allege resulted from the incidents described in your Complaint, including both those injuries of which you or your doctors are now aware or of which you or your doctors now suspect, including but not limited to the following specific details:

    a.    list and describe each specific detail, giving the exact location within or upon your body of all injuries, and the nature of your complaint [whether physical, dental, emotional, nervous, mental or psychological];

-3-

b.    if you have completely recovered from each such injury and complaint, state the date you recovered from such injury or complaint;

c.    identify or separately list all of your present disabilities and complaints [whether objective or subjective], the frequency and duration of your complaints of pain, etc., the location of and degree of any limitations you now have, and a detailed description of any medical condition you have at the present time, which you attribute to the incidents;

d.    identify or separately list and describe each of your claimed permanent disabilities; and

e.    if as a result of any injury in the incidents described in your Complaint, any doctor gave you a temporary or permanent disability rating, give the name and address of the doctor, what the rating covers, when the rating was made, the percentage of rating and the reason therefor.

Answer:  On December 14, 2001, I incurred the following, among other injuries: Right foot, forehead and left elbow contusions and abrasions facial abrasions avulsion on nose (permanent scar).

a.    I am suffering from the psychological aftermath of my treatment by the defendants.  The worst symptom is that I have severe repressed anger, for which I presently am treating.

b.    I have not recovered.  I am presently undergoing treatment.

c.    The worst disability is my emotional state.  I try hard all the time to remain calm but it is hard as I have severe repressed anger.  This impacts my relationship with my wife and hampers me in my day to day functioning.  I have trouble concentrating on any complex work. I am afraid to stay out after dark.  I am fearful of continued retaliation and this fear prevents me from functioning in a free and normal manner.

d.    The worst disability is my emotional state.  I try hard all the time to remain calm but it is hard as I have severe repressed anger.  This impacts my relationship with my wife and hampers me in my day to day functioning.  I have trouble concentrating on any complex work. I am afraid to stay out after dark.  I am fearful of continued retaliation and this fear prevents me from functioning in a free and normal manner.

e.    No doctor has yet given me a  temporary or permanent disability rating.

-4-

8. If, as a result of any injuries allegedly sustained in the incidents described in your Complaint, you were unable to perform any of your normal and usual functions, duties or activities, of whatever nature, at any time prior to the incidents [which you were able to perform before the incidents], state such function, duty, activity you were unable to perform, and also separately state what functions, duties or activities, if any, you are still unable to perform, and why.

Answer: The worst disability is my emotional state. I try hard all the time to remain calm but it is hard as I have severe repressed anger. This impacts my relationship with my wife and hampers me in my day to day functioning. I have trouble concentrating on any complex work. I am afraid to stay out after dark. I am fearful of continued retaliation and this fear prevents me from functioning in a free and normal manner.

9. Do you, or does anyone on your behalf, contend that as a result of the injuries allegedly sustained in the incidents described in your Complaint, there has been any aggravation of a pre-existing condition [whether a prior illness, disease, injury, or a mental, nervous or psychological condition]? If so, please supply the following specific details:

     a.     state the condition which has been aggravated;

     b.     which of your injuries caused the aggravation;

     c.     when the aggravation commenced;

     d.     how long it lasted;

     e.     the extent or degree of aggravation;

     f.     when were you first advised or became aware that such a pre-existing condition existed and when it became aggravated; and,

     g.     by whom, if anyone, were you advised that such a condition pre-existed and had been aggravated (if it is exclusively your own opinion, please so state).

Answer: Presently I am not complaining that any prior injury was aggravated. However, it is possible that the course of my psychological counseling could reveal prior issues that had been in remission and not affecting me that have been aggravated by the treatment my wife and I received from the defendants.

10.  If you received any medical care or treatment from any doctor, or anyone as a result of the alleged injuries of suffering received from the incidents described in your complaint, please supply the following details:

    a.      the date you first received such medical care or treatment, and the name and address of the doctor, or other practitioner who treated you and where;

    b.      the name and address of each such doctor, or other practitioner, indicating his/her specialty, if any, whom you have seen for medical care or treatment as a result of injuries received in this incident;

    c.      for what injuries or complaint did each doctor, or other practitioner treat or care for you;

    d.      the dates of care or treatment by each such person;

    e.      the treatment given and the treatment by each such person;

    f.      the medication and narcotics prescribed, by whom and for what purpose, where obtained, and the frequency and the period of time from date to date over which taken; and

    g.      the nature, extent and duration by dates of any self-administered home care or therapy, and if recommended by any doctor or therapist, give his name and address.

Answer:

    a.      12-16-01 Fallon Medical Center in Leominster, MA

    b.      Primary care physician   Dr. Shehe, Leominster Medical Center in Leominister, MA 978-534-6500

    c.      Right foot, forehead and left elbow contusions and abrasions, facial abrasions, avulsion on nose (scar)

    d.      I do not remember the specific dates of treatment except for immediately after I was released from being arrested after my house burned down.

    e.      X-rays were taken, wounds were cleaned and bandaged and I was given ointments and pain medication.  There may have been other treatment but  I do not now remember any other specific treatments.

    f.      Other than ointment and pain medication, I do not remember whether there was any other medication.

-6-

g.    My physical wounds healed fairly quickly and routinely, except for the scar my nose.  I avoided addressing my psychological wounds and am only confronting them now.  I expect I will need counseling for some time.  I am presently undergoing counseling with John Consolo, of Leominster, Massachusetts.

11.  What is your education, special training and experience for your work, business, occupation or profession?

Answer:  I am a Master Electrician which involves schooling both past and ongoing.  I am an electrical contractor which requires my reputation to be good so that I will be able to attract quality labor.  An outstanding reputation is also a necessity to get jobs as people must trust me in their homes.

12.  Do you claim lost wages as a result of the alleged incidents in your Complaint?  If so, what is the amount of lost wages?  If you lost any time from work since the incidents for any other reason, not due to injuries received in the incidents, state the reasons and indicate the periods of time lost and the amount of income lost, if any, stating in complete detail how you compute such a loss.

Answer:  I believe that the ongoing harassment by law enforcement personnel has damaged my reputation.  This has effected my ability to attract quality labor and restricted the marketplace.  I believe these damages are large, as my company's gross income declined from a peak of close to one million dollars annually in 1998 to under $400,000 for the past years.  I believe this decline in income is due to the affect the arrests by the defendants and the adverse publicity that stemmed from those arrests had on my reputation and am struggling to document the connection.  I also suffered further and extensive damage to my home because the defendant officers told the firefighters to stop fighting the fire.

13.  In connection with your claim for medical, dental and other expenses for which you have already received bills, please provide the following information about these bills:

a.    the amount of each bill, the date thereof, the items charged, the dates on which services were rendered, and the name and address of the person or firm that rendered or supplied the same [itemized bills may be attached to supply portions of your answers in detail];

1.    for each doctor, and other practitioner, including any and all expenses;

-7-

2.      for each hospital or institution;

3.      for the purchase or rental charge for each device, and supply and equipment, and, if rented, the period of time so rented, identifying and describing what each item as for and the period of time actually used;

4.      for medicines and medical supplies and when and where purchased;

5.      for nursing care, giving the inclusive period of time from date to date and indicating whether the care was by a registered or practical nurse, and the name and address of each nurse;

6.      for household help and household services, the nature of the work, the frequency supplied, the inclusive period of time from date to date that such work or services were furnished, and the name and address of each such employed person or firm rendering such services, and their relationship to you, if any;

7.      for any medical expenses, including first aid; and

8.      for ambulance service.

Answer: I do not remember the exact amount of my medical bills. They were covered by my HMO. My attorney is seeking copies of releyant bills which will be provided.

14. In connection with you future medical expenses and care, based upon your best information and belief or based upon what you can ascertain, describe in detail the duration of such future medical care, the nature of it and what it will be for, by whom it is to be rendered if now known, and the estimated cost thereof by each such person or institution.

Answer: I continue to attend counseling sessions with John Consolo. I do not know how long I will need treatment.

15. State all witnesses' names, addresses and telephone numbers known to you, your attorney, your insurance carrier, their representatives, or anyone acting in your behalf or their own behalf, including but not limited to the following information:

a.      of all persons who saw or heard, or claim to have seen or heard, or to have any knowledge of any of the events or happenings which occurred at the time of the incidents referred to in our lawsuit. State the relationship of each such witness to you;

b.      of all persons who heard, or claim to have heard any statements made by any person concerning how the incidents happened. Please include all

-8-

who witnessed or heard statements made by your or any of the
Defendants that are alleged in your Complaint;

c.     of all persons who have or claim to have, any knowledge concerning the
injuries or damages sustained by you or others in the incidents, other
than the doctors you have previously mentioned; and

d.     of all persons who witnessed any of the incidents or allegations in our
Complaint regardless of whether you intend to call these people to
testify.

Answer:

a.     In addition to myself, my wife and the defendants, I can identify the
following witnesses: Ken Holmquist 142 Ashby Rd, Ashburnham, MA
01430 978 827 5950; Joseph Maguy 144 (?) Ashby Rd., Ashburnham,
MA 01430 978 827 4408; My brother in law, Jeff Brooks and my
nephew, John Brooks, Ashburnham, MA, my eldest sister, Carol Klardie,
Bedford NH, my employee, Brian Goyette, Gardner MA, and other
family members who called the Winchendon police in efforts to bail my
wife Pamela and me and to provide us with clothing and other essentials.
My attorney, Stephen Panagiotis, Fitchburg, MA; Sean Connors,
Baldwinville, MA, and Shane Conners, Royalston MA, regarding my
lost business and difficulty recruiting employees.

b.     Witnesses include all the defendants, other Winchendon and
Ashburnham police officers and the other witnesses listed above.

c.     Witnesses include, in addition to the defendants and the witnesses listed
above, my medical providers and other family members.

d.     Witnesses include, in addition to the defendants and the witnesses listed
above, my medical providers and other family members.

16.  Please describe the events surrounding each incident described in your Complaint
including but not limited to the following information:

a.     the time of day and date of each incident and the location;

b.     the person or persons present;

c.     the manner in which the incident occurred;

d.     each and ever act or statement of the Defendant(s), agent(s), servant(s)
and/or employee(s) which constituted a deprivation of your
constitutional rights, an intentional tort, or otherwise contributed to the
injuries you allege that the Defendant(s) caused you;

e.    whether you had ingested or consumed any alcoholic beverage, prescription medication, or illicit narcotic within twelve (12) hours of the incident(s) alleged; and if so, specify quantity, type, and brand name of such beverages, medications or narcotics, where you obtained such items; and who else was present or witnessed your ingesting or consuming such items;    .

f.    the substance of any oral communications or statements immediately prior, during and after the incidents described in your Complaint:

1.    made by you or;

2.    by any witnesses;

3.    by any of the Defendants;

4.    by any agents of the Defendants which contributed to or was a factor in any of the alleged wrongs committed which form the basis of this lawsuit.

Answer:

a.    I had an office manager who worked for me for three years before I realized in the summer of 1998 that she was stealing from me and fired her. She was friends with Sheriff Flynn and politically well connected in Worcester county. I believe her political connections were used in an attempt to stop prosecution of her and I believe the harassment and violations of my civil rights were a result of her political connections.

Some of the specific acts of harassment were the illegal search of my home and my arrest and prosecution for possession of marijuana allegedly found during this search; the intrusion into my home when my wife and I were in our jacuzzi and threatened; my arrest when my house on fire, when the defendants told the firefighters to let it burn; and the several subsequent arrests for operating under.

b.    Myself, sometimes my wife, and various of the defendants, depending on which of the arrests or other acts of harassment, as well as the witnesses listed in answer #15 (a), depending on which arrest or act of harassment.

c.    The manner was rude and aggresively

d.    Plaintiff objects to this interrogatory as overly broad and burdensome, as he cannot possibly list each and every act of harassment that was part of the pattern and conspiracy depriving him of his constitutional rights.

Without waiving such objection, plaintiff describes some of the acts as follows:

The first was the illegal search of my home in the middle of the night under the guise of a restraining order. A small quantity of marijuana was found to which I plead guilty hoping to end matters. It did not.

-10-

On January 6, 2000, I was stopped while returning home from work late one evening. I was booked for DUI. I was treated extremely harshly in that I was handcuffed to a bar at the booking station for hours without the use of a restroom. I reported this to then Chief, Jack Murray. He said "I'll talk to them." I was later found not guilty of this offense in a jury trial in Fitchburg District Court. To my best knowledge, Chief Murray never disciplined anyone. I do not know if he actually talked to the arresting officers or, if he did, whether he praised or admonished them, but I have my suspicions.

Late one afternoon while my wife and I were relaxing in our outdoor jacuzzi, defendants Brennan and Parsons of the Ashburnham Police snuck into our back yard to accuse us of bathing naked. We were ordered to stand up. When we did, defendant Brennan found us attired. He then went on to imply that if he could ever document us improperly attired we would be prosecuted as sex offenders.

On December 14, 2001, while our home was on fire several defendant Ashburnham Police Officers, without any justification, repeatedly pepper sprayed me and beat me severely. They arrested myself and my wife on multiple counts. They set our bail at $5,000.00 cash each. They gave false information to concerned family members who called. They later denied these calls ever happened despite our copies of telephone records. During our incarceration a male officer was allowed to invade my wife's cell. Despite our being barely clothed at all, they refused us any warm clothing at all. Later in the morning when the new shift came on we were finally each given a small blanket. I spent the entire evening listening to my wife's crying and begging for assistance knowing that these officers were enjoying watching these events on their cameras. We were later found not guilty on all charges in a jury trial in Fitchburg District Court. To the best of my knowledge, none of the police were ever so much as questioned about their behavior.

On April 27, 2002 About 1:00AM on a Saturday at our rental house in Leominister, I was awakened by my wife who was having trouble sleeping but had no more of her medication. She asks if I could go to Ashburnham and retrieve her medication that she kept in the trailer in our yard where we were rebuilding our home. On my way back I was stopped for DUI by Officer Todd Parsons. I was found not guilty in a jury trial in Fitchburg District Court.

      e.     I do not recall ingesting alcohol or medication before each arrest or act of harassment

      f.     Plaintiff objects to this interrogatory as overly broad and burdensome, as he cannot possibly list each and every oral communication in the course of the four arrests and the other acts of harassment that was part of the pattern and conspiracy depriving him of his constitutional rights.

Without waiving such objection, plaintiff describes the conversation as the defendants telling me I was under arrest, swearing at me and threatening me, saying things like "You're going down this time" and like comments.

The conversations during the night of the fire should be documented in a state arson investigator's report, as the investigator had me write out a handwritten account of the events of the evening. However, I do not have a copy of that statement or the report.

-11-

17.  Did you or anyone on your behalf as a result of the alleged incidents described in your Complaint ever make a formal complaint against employees of the Defendants alleging misconduct and if so please supply the following information:

       a.     where the complaint was made;

       b.     to whom it was reported;

       c.     when it was reported;

       d.     how it was reported;

       e.     the disciplinary action(s), if any, that were taken by the Defendant's employer against the Defendant(s) as a result of said complaint, if you are aware of any.

Answer:  Yes, as mentioned above I complained directly to Chief Jack Murray about his officers' behavior. His only response was "I'll talk to them". To my best knowledge, Chief Murray never disciplined anyone. I do not know if he actually talked to the arresting officers or, if he did, whether he praised or admonished them, but I have my suspicions.
My criminal lawyer made a complaint to Chief of Police Murray and my present civil lawyer also made a written demand.  No response was received to either.

       a.     Booking station Ashburnham Police Station

       b.     Chief Murray

       c.     After one of the OUI arrests

       d.     Orally to Chief Murray

       e.     None that I am aware of.

18.  Please describe fully and completely how the incidents described in your Complaint happened, stating in your answer all events relating thereto in sequential order.

Answer:   Plaintiff objects to this interrogatory as overly broad and burdensome, as he cannot possibly list each and every detail of each incident, arrest and act of harassment that was part of the pattern and conspiracy depriving him of his constitutional rights.

Without waiving such objection, plaintiff describes some of the acts as follows:

The first was the illegal search of my home in the middle of the night under the guise of a restraining order.  A small quantity of marijuana was found to which I plead guilty hoping to end matters.  It did not.

On January 6, 2000, I was stopped while returning home from work late one evening.  I was booked for DUI.  I was treated extremely harshly in that I was handcuffed to a bar at the booking station for hours without the use of a restroom.  I reported this to then Chief, Jack Murray.  He said "I'll talk to them." I was later found not guilty of this offense in a jury trial in Fitchburg District Court.  To my best knowledge, Chief Murray never disciplined anyone.  I do not know if he actually talked to the arresting officers or, if he did, whether he praised or admonished them, but I have my suspicions.

-12-

Late one afternoon while my wife and I were relaxing in our outdoor jacuzzi, defendants Brennan and either defendant Baranowski or defendant Parsons of the Ashburnham Police snuck into our back yard to accuse us of bathing naked. We were ordered to stand up. When we did, defendant Brennan found us attired. He then went on to imply that if he could ever document us improperly attired we would be prosecuted as sex offenders.

On December 14, 2001, while our home was on fire several defendant Ashburnham Police Officers, without any justification, repeatedly pepper sprayed me and beat me severely. They arrested myself and my wife on multiple counts. They set our bail at $5,000.00 cash each. They gave false information to concerned family members who called. They later denied these calls ever happened despite our copies of telephone records. During our incarceration a male officer was allowed to invade my wife's cell. Despite our being barely clothed at all, they refused us any warm clothing at all. Later in the morning when the new shift came on we were finally each given a small blanket. I spent the entire evening listening to my wife's crying and begging for assistance knowing that these officers were enjoying watching these events on their cameras. We were later found not guilty on all charges in a jury trial in Fitchburg District Court. To the best of my knowledge, none of the police were ever so much as questioned about their behavior.

On April 27, 2002 About 1:00AM on a Saturday at our rental house in Leominister, I was awakened by my wife who was having trouble sleeping but had no more of her medication. She asks if I could go to Ashburnham and retrieve her medication that she kept in the trailer in our yard where we were rebuilding our home. On my way back I was stopped for DUI by Officer Todd Parsons. I was found not guilty in a jury trial in Fitchburg District Court.

19. If you allege you were subject to any incidents involving officers of the Ashburnham Police Department, other than those alleged in your complaint, which you contend were harmful, offensive or in any way inappropriate, please describe each such incident, specifying the date and time the incident occurred, what officer(s) were involved in the incident, and who witnessed any such incidents.

Answer: Ashburnham Officers routinely tail gate us. They also stop some of the cars leaving our home. They have been doing so since 1999 and continue to do so on occasion, although this largely has stopped since we filed this lawsuit. Ashburnham officers would put on their brakes and turn around to follow us any time we passed on the street, but this also has stopped, for the most part, since we filed this lawsuit.

20. Please identify each expert witness designated by the Plaintiff who is expected to testify at trial by name and professional address, and:

        a.      state his/her area of expertise including his/her specialty, if any, and his/her sub-speciality within his/her general area of specialty, if any;

        b.      identify each book, other treatise, learned report, or other learned paper authored, in whole or in part by him/her in the area of his/her expertise;

-13-

    c.        state the entire content, verbatim, of each document furnished to him/her as the basis for seeking his/her expert opinion, except that the medical record may be stated by reference to specific pages furnished or by reference to the entire record, as the case may be;

    d.        state the entire content of each verbal statement made to him/her as the basis for seeking his/her expert opinion and, in this connection, identify each person making each verbal statement to him/her;

    e.        state the precise subject matter about which she/he is expected to testify;

    f.        state in detail each opinion which she/he is expected to state or express upon the trial of this action;

    g.        state the detailed basis for each opinion she/he is expected to express or state upon the trial of this action; and

    h.        state the entire content of each document authored by him/her relating to any manner to the subject matter of the foregoing subparts designated (a) to (g), inclusive, of this interrogatory.

Answer:  My lawyer has not yet determined whom he may call as an expert witness, but will supplement this interrogatory as appropriate.


21.  Please state with particularity every fact within your knowledge which you relied upon to make the assertions against the Ashburnham Defendant(s) contained in Paragraph 28 of your Second Amended Complaint concerning the purported false imprisonment of the plaintiffs.


Answer:  Plaintiff objects to this interrogatory as overly broad and burdensome, as he cannot possibly list each and every fact he relied upon to make the assertions against the Ashburnham Defendant(s) contained in Paragraph 28 of the Second Amended Complaint concerning the purported false imprisonment.

Without waiving such objection, plaintiff states that he has been arrested at least four times, as set forth above, and each arrest was without probable cause but fabricated to harass and falsely imprison the plaintiff.


22.  Please state with particularity every fact within your knowledge which you relied upon to make the assertions against te Ashburnham Defendant(s) contained in Paragraph 31 of your Second Amended Complaint concerning the purported outrageous conduct known to inflict severe emotional distress.


-14-

Answer: The Plaintiff objects to this interrogatory as calling for him to ascertain and reveal the mental impressions of his attorney and former attorney, and divulge lawyer client privileged communications. The Plaintiff also objects to this interrogatory as seeking information protected from disclosure as work product. Without waiving the above objection, see answers to preceding interrogatories and allegations of the Complaint. The acts described therein are outrageous and beyond the norms of human decency.

23. Please state with particularity every fact within your knowledge which you relied upon to make the assertions against the Ashburnham Defendant(s) contained in Paragraph 32 of your Second Amended Complaint concerning the purported physical manifestations of mental and emotional distress suffered by plaintiffs.

Answer: The Plaintiff objects to this interrogatory as calling for him to ascertain and reveal the mental impressions of his attorney and former attorney, and divulge lawyer client privileged communications. The Plaintiff also objects to this interrogatory as seeking information protected from disclosure as work product. Without waiving the above objection, see answers to preceding interrogatories and allegations of the Complaint. The acts described therein are outrageous and beyond the norms of human decency.

24. Please state with particularity every fact within your knowledge which you relied upon to make the assertions against the Ashburnham Defendant(s) contained in Paragraph 38 of your Second Amended Complaint concerning the purported conduct that constitutes a violation of civil rights by threats, intimidation or coercion.

Answer: The Plaintiff objects to this interrogatory as calling for him to ascertain and reveal the mental impressions of his attorney and former attorney, and divulge lawyer client privileged communications. The Plaintiff also objects to this interrogatory as seeking information protected from disclosure as work product. Without waiving the above objection, see answers to preceding interrogatories and allegations of the Complaint. The acts described therein constitute arrests and other acts of coercion and intimidation.

25. Please state with particularity every fact within your knowledge which you relied upon to make the assertions against the Ashburnham Defendant(s) contained in Paragraph 41 of your Second Amended Complaint concerning the purported participation in or conspiracy to further the prosecution of criminal actions with malice.

Answer: The Plaintiff objects to this interrogatory as calling for him to ascertain and reveal the mental impressions of his attorney and former attorney, and divulge lawyer client privileged communications. The Plaintiff also objects to this interrogatory as seeking information protected from disclosure as work product. Without waiving the above objection,

-15-

see answers to preceding interrogatories and allegations of the Complaint. The acts described therein constitute participation in or conspiracy to further the prosecution of criminal actions with malice.

Signed under the pains and penalties of perjury this _6th_ day of _April_, 2005.

_____
Kenneth Jean

Objections by:

_____
Andrew M. Fischer

### CERTIFICATE OF SERVICE

I, Andrew M. Fischer, hereby certify that on this date I served a copy of the above document on the defendants by mailing a copy, first class, postage prepaid to John J. Cloherty, III, Pierce, Davis, Perritano, LLP, Ten Winthrop Square, Boston, MA 02110; Regina Ryan, Merrick, Louison & Costello, 67 Batterymarch Street, Boston, MA 02110; Austin M. Joyce, Edward P. Reardon, P.C., 397 Grove Street, Worcester, MA 01605; and to Nancy Frankel Pelletier, Robinson Donovan, P.C., 1500 Main Street, Ste. 1600, Springfield, MA 01115-5609.

Date: _4/7/05_

_____
Andrew M. Fischer

jean\ansintken

-16-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KENNETH AND PAMELA PRICE JEAN, Plaintiffs | ) ) ) ) | CIVIL ACTION NO. 03-12306-FDS |
| v. | ) ) ) | |
| CITY OF ASHBURNHAM POLICE DEPARTMENT, CITY OF WINCHENDON POLICE DEPARTMENT, ROB HARRINGTON, in his capacity as CHIEF OF THE WINCHENDON POLICE DEPARTMENT, JACK MURRAY, in his capacity as CHIEF OF THE ASHBURNHAM POLICE DEPARTMENT, TODD C. PARSONS, RAYMOND M. ANAIR, ROBERT BRENNON, WILLIAM P. GEOFFROY, BRIAN HART, KEVIN AHEARN, KEVIN E. WOLSKI, OFFICER JOHN DOE, OFFICER JOHN POE, Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

## ATTORNEY AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION FOR CRIMINAL OFFENDER RECORD INFORMATION

The Undersigned Counsel does hereby swear, state and affirm as follows:

1.   As the attorney of record for the Defendant, I am requesting the Criminal Offender

Record Information, conviction data, arrest reports, and probation records concerning

Pamela Price Jean.

2.   Such information will be used exclusively for witness impeachment purposes and/or trial

strategy purposes related to the above-captioned lawsuit.

3.   I will not disclose this information to any unauthorized persons and/or in violation of

Mass. Gen. L. ch. 6, § 167 et. seq. or 803 C.M.R. § 1.00 et. seq.

Signed under the pains and penalties of perjury this 26 day of July, 2005.

John A. Cloherty III, BBO#566522

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 7/26/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH AND PAMELA PRICE JEAN,<br>          Plaintiffs<br><br>v.<br><br>CITY OF ASHBURNHAM POLICE<br>DEPARTMENT, CITY OF WINCHENDON<br>POLICE DEPARTMENT, ROB HARRINGTON,<br>in his capacity as CHIEF OF THE WINCHENDON<br>POLICE DEPARTMENT, JACK MURRAY, in his<br>capacity as CHIEF OF THE ASHBURNHAM<br>POLICE DEPARTMENT, TODD C. PARSONS,<br>RAYMOND M. ANAIR, ROBERT BRENNON,<br>WILLIAM P. GEOFFROY, BRIAN HART,<br>KEVIN AHEARN, KEVIN E. WOLSKI,<br>OFFICER JOHN DOE, OFFICER JOHN POE,<br>          Defendants | CIVIL ACTION NO. 03-12306-FDS |

## ORDER FOR INSPECTION AND COPYING OF
## CRIMINAL OFFENDER RECORD INFORMATION (CORI) REPORT

Upon Defendant Town of Ashburnham's motion for copying of the criminal record information of the below-identified individual, it is hereby ORDERED, ADJUDGED and DECREED that the Defendant's counsel, John J. Cloherty III, shall have access to the Criminal Offender Record Information (CORI) report and that the Criminal History Systems Board wherein such reports are maintained shall produce, upon payment of a reasonable fee, copies of the CORI Report to the Defendant, through Defendant's attorney, John J. Cloherty III, PIERCE, DAVIS & PERRITANO, LLP, Ten Winthrop Square, Boston, MA 02110, concerning the following person:

**Kenneth Jean**
141 Ashby Road, Ashburnham, MA 01430
D.O.B. 3/27/56

The Defendant shall <u>not</u> be entitled to access arrest or probation records maintained by police departments or the Department of Probation.

ORDERED:

_____
Judge

ENTERED:     _____
                     Clerk

Dated:     _____, 20_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH AND PAMELA PRICE JEAN,<br>    Plaintiffs<br><br>v.<br><br>CITY OF ASHBURNHAM POLICE<br>DEPARTMENT, CITY OF WINCHENDON<br>POLICE DEPARTMENT, ROB HARRINGTON,<br>in his capacity as CHIEF OF THE WINCHENDON<br>POLICE DEPARTMENT, JACK MURRAY, in his<br>capacity as CHIEF OF THE ASHBURNHAM<br>POLICE DEPARTMENT, TODD C. PARSONS,<br>RAYMOND M. ANAIR, ROBERT BRENNON,<br>WILLIAM P. GEOFFROY, BRIAN HART,<br>KEVIN AHEARN, KEVIN E. WOLSKI,<br>OFFICER JOHN DOE, OFFICER JOHN POE,<br>    Defendants | CIVIL ACTION NO. 03-12306-FDS |

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1 CONCERNING
MOTIONS FOR CRIMINAL OFFENDER RECORD INFORMATION OF PLAINTIFFS**

       I, John J. Cloherty III, Esquire, the undersigned, certify that, pursuant to Local Rule 7.1,

I have served all counsel of record a copy of the accompanying motions and invited a conference to

narrow the issues raised in the motions. Plaintiffs' attorneys have not communicated their consent

to these motions, nor responded to the invitation for a Local Rule 7.1 conference. Being unable to

narrow the issues in dispute, the defendant hereby files the accompanying motions.

                              John J. Cloherty III, BBO#566522

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on this day a true copy of the
above document was served upon each attorney of
record, by electronic filing.
_____
Date