## JASON AND FISCHER
ATTORNEYS AT LAW
47 WINTER STREET
BOSTON, MASSACHUSETTS 02108
TEL. (617)423-7904
FAX. (617)451-3413

LINDA GAYLE JASON
ANDREW M. FISCHER

October 24, 2003

Borton Gould
Chairman, Winchendon Board of Selectman
109 Front Street
Winchendon, MA 01475

Roy Bourque
Winchendon Chief of Police
15 Pleasant Street
Winchendon, MA 01478

James Kreidler
Winchendon Town Manager
109 Front Street
Winchendon, MA 01475

Charles Packard, Chair
Board of Selectmen
Town of Ashburnham
32 Main Street
Ashburnham, MA 01430

Wesley Landry, Town Clerk
Town of Ashburnham
32 Main Street
Ashburnham, MA 01430

Jack Murry
Chief of Police
Town of Ashburnham
12 Memorial Drive
Ashburnham, MA 01430

Re:   Violation of Civil Rights of Mr. Kenneth Jean and Mrs. Pamela Price Jean
      by the Ashburnham and the Winchendon Police

To the above Chief Executive Officers:

This is a formal demand, brought pursuant to Massachusetts General Laws, chapter 258, on behalf of Mr. Kenneth Jean and his wife Mrs. Pamela Price Jean, whom this office represents. This office has contacted you in your capacity as Executive Officers of the Town of Ashburnham and Winchendon and the employers of Ashburnham and Winchendon Police Officers.

Mr. and Mrs. Jean's claims arise out of multiple unlawful detentions, assaults, arrests and prosecutions inflicted upon Mr. and Mrs. Jean by various Ashburnham and Winchendon police officers under color of law. Additionally, Mr. and Mrs. Jean claim that the misconduct they suffered was a direct and proximate result of a failure to properly train, discipline, and supervise the officers in question, all of whom are under the control of the towns of Ashburnham and Winchendon. The relevant facts of these incidents are as follows:

Re:     Kenneth and Pamela Price Jean
        Page 2 of 6
        October 24, 2003

1. This ongoing series of events began in the summer of 1999 when two (2) currently unidentified Officers from the Ashburnham Police Department served a restraining order, issued by Sandra Senecal. Although Mr. and Mrs. Jean are stable residents of Ashburnham, who own and have owned their own home for some time and Mr. Jean operates and has operated a local business for years, the restraining order was served, by waking Mr. and Mrs. Jean, unnecessarily, at one (1) a.m. Over the objections of Mr. Jean and the unidentified younger officer at the scene, the senior Officer forced his way into the Jeans' home and searched it, without a warrant or any probable cause, until he "found" a small amount of marijuana. Mr. Jean subsequently pleaded guilty to possession of a class D substance, not wanting to incur the legal fees necessary to have the fruits of the illegal search suppressed and not realizing that this incident the beginning of a pattern of harassment.

2. The second event occurred on January 6, 2000 at approximately midnight, Mr. Jean was returning to his home from a lengthy day of work, lawfully operating his motor vehicle on Route 101 North in Ashburnham, Massachusetts. Mr. Jean was stopped, without warrant or probable cause, by Ashburnham Patrolman Todd C. Parsons. After producing his license and registration for the officer, Mr. Jean was asked to step out of the vehicle, at which time a field sobriety test was performed. Officer Parsons then placed Mr. Jean under arrest for failing to display a registration sticker, a marked lane violation, and operating under the influence of liquor.

3. Officer Parsons took Mr. Jean to the Ashburnham Police Station where he was booked and handcuffed to a bar on the wall in the booking station without being provided a chair to sit on for hours. Repeated requests to use the bathroom were ignored by various Ashburnham Police Officers. Eventually Mr. Jean was allowed to use the phone and he called Donna Shuffelton, his secretary, to come to the Police station and bail him out.

4. Ms. Shuffelton arrived at the Ashburnham Police station at one (1) a.m. and brought thirty (30) dollars in cash for Mr. Jean's bail. However, once the bail commissioner arrived at approximately two (2) a.m., the Police refused to allow Mr. Jean to leave without a ride. As a result, Mr. Jean was forced to remain in the custody of the Police.

5. Mr. Jean was transported to the Winchendon Police Department shortly afterwards, at which time he was finally allowed to use the bathroom. In the morning, Mr. Jean was transported back to the Ashburnham Police Department where he was again handcuffed to a bar in the booking area. Mr. Jean was confronted by Ashburnham Police Chief Jack Murry. After hearing Mr. Jean describe the sadistic treatment he had suffered at the hands of the Ashburnham Police Officers, Chief Murry promised, "I'll talk to them."

6. Later that morning, Mr. Jean was transported to the Fitchburg District Court to be arraigned. In addition to the charges listed above, Mr. Jean also was charged with a probation violation. Mr. Jean was found not guilty on all charges after a jury trial in the Fitchburg District Court.

Re:     Kenneth and Pamela Price Jean
        Page 3 of 6
        October 24, 2003

7. A third incident occurred on November 29, 2000. Mrs. Jean was parked by the side of the road in Winchendon, Massachusetts attempting to get reception on her cell phone, when she was approached by two Winchendon Police Officers. Mrs. Jean was not in distress and was not violating any laws. Mrs. Jean responded to the Officers' inquirers by stating that she was fine and did not require any assistance.

8. After seeing the picture of Mr. Jean on the dashboard of her Dodge Durango, the Officers became confrontational. The two officers ordered Mrs. Jean out of her motor vehicle and, without probable cause or lawful reason, took her into custody. Mrs. Jean was held in "protective custody", where she was harassed and intimidated by these and other male officers from the Winchendon Police Department, without a matron or any female present. Mrs. Jean eventually was released into the custody of a friend, afer being detained for two to three hours without basis or probable cause.

9. When Mr. Jean requested a copy of the report regarding this so called "protective custody" of his wife from the Winchendon Police Department, he was informed that no such report existed. Much later, after complaining to Winchendon Police Chief Rob Harrington, Mr. Jean was given a report for the incident that was dated one month after the incident occurred.

10. After Mr. Jean was found not guilty on all of the charges stemming from his January 6, 2000 arrest, the Fitchburg District Court vacated the 209A restraining order issued on behalf of Sandra Senecal. Now entitled to the return of his FID card and firearm, Mr. Jean attempted to get them back. However repeated attempts by Mr. Jean to retrieve his FID card and his shotgun from the Ashburnham Police were denied. Repeated applications for the return of his FID card have all been denied by Chief Murry, despite the fact that Mr. Jean had appealed his decision to a District Court Judge, who ordered his FID card and his shotgun returned to him. To date Mr. Jean's shotgun is still is the possession of the Ashburnham Police, notwithstanding the ruling of the Fitchburg District Court.

11. The next event occurred on March 23, 2001. Mrs. Jean was traveling along Route 140 in Ashburnham during a snow storm when she was forced to swerve to avoid hitting a dog who was in the road. This is corroborated by a witness to the incident. For this offense Mrs. Jean was arrested and taken into custody by Ashburnham Patrolman Raymond M. Anair because he "suspected" that Mrs. Jean was intoxicated at the time.

12. Mrs. Jean was handcuffed to a wall in the Ashburnham Police station where she was taunted belittled and harassed by members of the Ashburnham Police Department. No female officers or matrons were present at any point while Mrs. Jean was held and searched by the Winchendon Police. One of the officers retrieved Mrs. Jean's drivers license from her handbag, at which time he began chanting "I get to cut your license!" over and over while dangling it in front of her. Despite Mrs. Jean's requests to other officers that they stop the harassment, those unidentified officers took no action to make the harassment stop.

Re:    Kenneth and Pamela Price Jean
        Page 4 of 6
        October 24, 2003

13. Mrs. Jean was charged falsely with operating under the influence, two counts of assaulting and battering a Police Officer, and assault and battery with a dangerous weapon on a Police Officer. Mrs. Jean was found not guilty on all charges by a jury in the Winchendon District Court on December 19, 2001.

14. In May of 2001 Sargent Robert Brennon and Patrolman Todd Parsons of the Ashburnham police department intentionally trespassed on Mr. Jean's land. While Mr. and Mrs. Jean were in the Jacuzzi in the back yard of their house, both Sargent Brennon and the same Patrolman Parsons came onto the Jean property, illegally trespassing, and snuck up on the unsuspecting Mr. and Mrs. Jean. Neither Sargent Brennon nor Patrolman Parsons had a warrant, probable cause, or any exigent circumstances that would have authorised their trespassing on Mr. Jean's property. Sargent Brennon and Patrolman Parsons told Mr. and Mrs. Jean that if the Ashburnham Police can ever document "naked bathing", they would file charges against the Jeans as sex offenders.

15. The next incident occurred on May 23, 2001 Mrs. Jean was standing on the sidewalk speaking with Mr. Jean from a pay phone in Winchendon, Massachusetts. Mrs. Jean was approached by two Winchendon police officers, Kevin E. Wolski and William P. Geoffroy. When they approached her, she told them "I am fine and do not want to speak to you".

16. Officers Wolski and Geoffroy grabbed the pay phone from Mrs. Jean, hung it up, and arrested Mrs. Jean without cause. While at the station, the officers mocked Mrs. Jean, telling her that there is no way that she would be released that night and that she would be sent to the Framingham Women's Prison for the night. In the mean time, the Winchendon Police call Mr. Jean and told him that his wife was currently in protective custody and that he needed to come and collect her.

17. Mrs. Jean was charged with resisting arrest, three counts of disorderly conduct, and driving under the influence, despite the fact that her automobile was in Ashburnham at the time. The driving under the influence charge was dismissed by the Winchendon Police and re-filed by the Ashburnham Police, who never prosecuted the charge. In the Police report for the May 23, 2001 incident, Mrs. Jean's occupation was listed as prostitute for no apparent reason other than to harass and humiliate her. The presiding Judge of the Winchendon District Court held a hearing and determined that Mrs. Jean was seized without legal justification and all ordered all charges against her dismissed.

18. On December 14, 2001 sparks from the fireplace ignited a Christmas tree and set Mr. and Mrs. Jean's home ablaze. Ashburnham Sargent Robert Brennon, Patrolman Kevin C. Ahearn, and Patrolman Brian Hart arrived at the scene shortly after the blaze began. Mr. and Mrs. Jean were visibly upset and were concerned for the safety of their pet cats who were still in the burning building. Mr. Jean had already re-entered the burning home in an attempt to retrieve the cats. Mr. Jean was yelling the names of his cats and attempted to go into the back yard. At that point the Police Officers suddenly and without warning or cause began to wrestle Mr. Jean onto the ground. The officers sprayed Mr. Jean in the face with pepper spray. Both Mr. and Mrs. Jean were restrained, assaulted, battered, and arrested by Sargent Brennon, Patrolman Ahearn, and Patrolman Hart.

Re:   Kenneth and Pamela Price Jean
      Page 5 of 6
      October 24, 2003

19. Both Mr. and Mrs Jean were then transported to the Ashburnham Police Department. Once there, Mr. and Mrs. Jean were put in separate cells. Mr. Jean was dressed only in wet sweat pants and Mrs. Jean was dressed only in a skimpy nightgown that was wet and ripped. At no time did the Ashburnham Police Officers offer either Mr. or Mrs. Jean any dry clothes, despite the fact that it was a cold December night. Mrs. Jean was frisked inappropriately by a number of male Officers once she arrived at the Police Station. Mr. and Mrs. Jean were held overnight in the Ashburnham Police station in their soaking wet clothes, at obvious risk to their health. While Mr. and Mrs. Jean were in custody they were subjected to repeated taunting harassment by the members of the Ashburnham Police Department, similar to what has been described above and has by this time become an ongoing pattern of harassment.

20. The Ashburnham Police refused to provide any information in response to the repeated calls from the family and friends of Mr. and Mrs. Jean other than that the police were holding Mr. and Mrs. Jean on five-thousand (5000) dollars cash bail, no bond.

21. Mr. and Mrs. Jean were not bailed out until the morning of December 15, 2001. Mr. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, making threats to kill, and resisting arrest. Mrs. Jean was charged with disorderly conduct, two counts of assault and battery on a Police Officer, and resisting arrest. Mr. and Mrs. Jean were found not guilty on all these charges in a jury trial at the Winchendon District Court.

22. The ongoing harassment of Mr. and Mrs. Jean has become part of a continuing pattern and practice of misconduct on the part of members of the Ashburnham and Winchendon Police Departments. Mr. Jean has made repeated complaints and requests that the offending officers be investigated and disciplined for their conduct, to no avail, as no investigation into these incidents has been conducted.

23. This ongoing pattern and practice of misconduct by officers from the Winchendon and Ashburnham Police Departments have occurred because of the failure on the part of the towns of Winchendon and Ashburnham and their respective police chiefs to respond to the complaints of the Jeans, and others, and properly supervise, train, and discipline the officers under their control. These failures delivered a message to the individual defendant police officers herein that there would be no departmental sanctions for engaging in misconduct. The towns of Ashburnham and Winchendon are liable for their failure to properly train, supervise, and discipline their police officers.

24. As a direct and proximate result of your police officers' actions, Mr. and Mrs. Jean have suffered severe physical pain and injury, extreme and lasting emotional distress, economic damage, injuries to their reputations and other damages.

25. All of the police officers involved were acting in the scope of their employment with the towns of Winchendon and Ashburnham and perpetrated the above described wrongful actions while acting under color of law in their capacity as Police Officers using threats, force, and intimidation.

Re:   Kenneth and Pamela Price Jean
      Page 6 of 6
      October 24, 2003

  26.  Your police officers, while under your direct authority, control, and supervision, have perpetrated and continue to perpetrate this harassment and abuse of Mr. and Mrs. Jean in violation of Mr. and Mrs. Jean's civil rights, as protected by the United States Constitution and the Massachusetts Declaration of Rights.

  As a result of the above-described conduct, Mr. and Mrs. Jean have incurred significant physical injury, significant economic damages, damage to their reputation, wrongful loss of liberty, and other damages.  This office herein makes formal demand for One Million Dollars ($1,000,000.00) in settlement of Mr. and Mrs. Jean's claims.  Unless that sum is tendered, or a reasonable offer of settlement is made, within the statutorily mandated time period, this office will deem the claim to be denied and proceed to file suit on behalf of Mr. and Mrs. Jean.

  We therefore further request that you instigate a proper internal affairs investigation regarding these allegations and properly discipline the Officers for their wrongful conduct.

  Awaiting your reply, I remain,

Very truly yours,

Andrew M. Fischer

AMF:ajb

jean\258ltr

CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8114
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8121
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8138
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8145
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8152
CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7003 0500 0000 1716 8169