

EXHIBIT A

Deposition of Kenneth Jean Volume 3
August 23, 2006

### 676

1  Q. Okay. Are you aware of your wife's
2  being diagnosed as abusing alcohol as of May
3  of 2001?
4  A. Am I aware of her being -- I don't
5  know what she's been diagnosed of, ma'am, in
6  most part.
7  Q. Were you present with her when she
8  went to the hospital in May of 2001?
9  A. I've been present with her a couple
10 of times at the hospital. I don't know which
11 incident you're referring to.
12 Q. Do you recall any occurrences on
13 which you actually took her to the hospital?
14 A. Yes, ma'am.
15 Q. And do you recall taking her to the
16 hospital the day after the incident in May of
17 2001?
18 A. I believe I do.
19 Q. Did you provide information to any
20 healthcare professional about your wife's
21 history or condition at any time?
22 A. I don't know, ma'am.
23 Q. Are you aware of your wife attending
24 Alcoholics Anonymous?

CURRAN COURT REPORTING

### 677

1  A. Yes, ma'am, she went with me.
2  Q. And when is it that you claim you
3  went?
4  A. I'm sorry?
5  Q. When is it that you claim you went?
6  A. Oh, multiple dates over years.
7  Q. When did you start going?
8  A. Would have been the first DUI.
9  Q. Your first DUI was 15, 20 years ago,
10 right?
11 A. I don't know when the first one was,
12 ma'am. It would have been the first one that
13 Ashburnham had charged with me.
14 Q. Was it before you were married?
15 A. Well, I believe it might have been
16 before, yeah, I'm almost certain it was.
17 Q. So you had -- you heard your wife
18 testify today that she didn't go to AA until
19 after the house fire?
20 A. That would be incorrect.
21 Q. Do you claim that any of the
22 activities of the Winchendon Police Department
23 had anything to do with an officer by the name
24 of Whitaker?

CURRAN COURT REPORTING

49 sheets

### 678

1  A. Yes, ma'am.
2  Q. You never mentioned that prior to me
3  asking you that question, is that fair to
4  state? We've been sitting here for almost
5  three hours, correct?
6  A. Why would I, ma'am? I totally
7  forgot him. He was not part of this
8  harassment, that all came about after. He was
9  a very early age, I'm going to say 1988 or
10 '89, it was a lone event, it was totally
11 unrelated to all of this.
12 Q. Totally unrelated to all of this?
13 A. Yes, ma'am. Unless any of the
14 police departments harbor animosity towards me
15 from that, but I would have no knowledge of
16 that.
17    MR. FISCHER: Wait for a
18 question, answer the question and
19 then wait for the next question.
20 Q. Is it fair to state that you don't
21 have any personal knowledge of any of the
22 incidents that occurred between the Winchendon
23 police officers and your wife other than
24 information you received from your wife?

CURRAN COURT REPORTING

### 679

1  A. No, ma'am.
2  Q. From whom did you receive
3  information other than your wife regarding the
4  incidents that occurred between the Winchendon
5  police officers and your wife?
6  A. Chief Harrington for one. All the
7  court cases I attended with my wife, that type
8  of thing, all probation interviews we went to.
9  Q. Well, what information did you
10 receive during the course of those events
11 other than the information from your wife?
12 From whom did you --
13 A. I would have been privy to all her
14 police reports. The police reports with
15 prostitute on it, I certainly seen a number of
16 times. Conversations with her counsel,
17 probation officer, again, Paul Trippi, things
18 to that effect.
19 Q. I'm asking you about anybody that
20 has any personal knowledge of the events that
21 occurred between your wife and the Winchendon
22 Police Department, do you have any information
23 from any source as to the facts that existed
24 between your wife and the Winchendon police

CURRAN COURT REPORTING

Deposition of Kenneth Jean Volume 3
August 23, 2006

**700**

1  testimony, sir?
2  A. Yes, I do.
3  Q. I thought earlier, and correct me if
4  I'm wrong, I thought earlier you testified
5  that that request to investigate had been made
6  to Ashburnham Police Department?
7  A. No, sir, Winchendon. That was
8  before I moved to Ashburnham.
9  Q. So earlier when you were responding
10 to my questions about your discussions with
11 the police about the investigation of
12 embezzlement, you were referring to the
13 Winchendon Police Department?
14 A. Yes, sir. I'm sorry if I didn't --
15 Q. It may have been a misunderstanding
16 on my part, I just want to clarify that. Did
17 Ashburnham Police have anything to do with the
18 investigation of the embezzlement charges,
19 sir?
20 A. Absolutely not, sir.
21 Q. The last question I want to ask you
22 is just a follow-up on the Officer Whitaker
23 allegations that you said were unrelated to
24 this. Do you recall that testimony, sir?

**701**

1  A. Yes, sir.
2  Q. Just to clarify what it was we were
3  referring to. What happened with Officer
4  Whitaker back in '88 or '89 as you described?
5  A. I believe it was early '89, probably
6  February, Officer Whitaker arrested me for
7  DWI, it turned out that he had never completed
8  the Civil Service test so he could not be a
9  police officer in Winchendon and they threw
10 his cases out.
11 Q. Because he wasn't a qualified police
12 officer at the time of the arrest?
13 A. And the town paid me the sum of $1
14 to not file a suit against him.
15 Q. And how was that payment of $1 made
16 by the town?
17 A. They never paid it.
18 Q. So do you have any record of any
19 agreement from --
20 A. It was said in open court. I
21 imagine they do the thing in court thing.
22 Q. In open court someone from the
23 Winchendon Police said we will pay him $1 not
24 to bring a claim?

**702**

1  A. The Winchendon Council I believe it
2  was, yes, sir. I believe it was the
3  Winchendon Council when they said 'cause it
4  was all done, you know, 'cause it was all
5  done, you know, you go make the deal behind
6  doors and then they come out and they announce
7  it to the judge saying they're going to
8  withdraw this police officer in -- what do
9  they call it -- fair payment of $1 to Mr. Jean
10 and stuff and then I actually did say
11 something after, I said where's my buck, and
12 it was Attorney Pusateri said don't push it.
13 Q. Attorney Pusateri said don't push
14 it?
15 A. Yes, sir.
16 Q. That was your attorney at the time?
17 A. Yes, sir.
18 Q. Do you remember who town council was
19 for Winchendon at that time?
20 A. No, sir.
21 Q. Did Officer Whitaker, he was working
22 for the Winchendon Police Department at that
23 time?
24 A. Yes, sir.

**703**

1  Q. That didn't have anything to do with
2  Ashburnham either?
3  A. No, sir.
4  MR. CLOHERTY: I don't have
5  any further questions for you
6  subject to the same reservations as
7  Ms. Pelletier.
8  MR. STERN: I just have one
9  more question based on Whitaker
10 stuff.
11  **RECROSS-EXAMINATION**
12 By Mr. Stern:
13 Q. How did it come -- do you know how
14 it came to be known that Officer Whitaker
15 didn't take the Civil Service exam?
16 A. My next door neighbor who ran the
17 laundry in town told me that Officer Whitaker
18 never took the Civil Service test, but he got
19 on because his brother-in-law was the chief of
20 police. I referred that to my counsel who
21 called the state Civil Service and the state
22 was very upset with him at the time and they
23 actually offered to come up for the trial or
24 it might have been a motion.

CURRAN COURT REPORTING

Deposition of Kenneth Jean Volume 3
August 23, 2006

**704**

1  Q. So it was brought up by your
2  attorney?
3  A. Yes, sir.
4  Q. Thank you. And that ended up
5  causing Officer Whitaker to have to resign
6  from the force?
7  A. Yes, sir, and they gave him a $5,000
8  severance pay.
9     MR. STERN: Thank you.
10    MR. FISCHER: I would just
11 point out for the record that Mr.
12 --
13    MR. CLOHERTY: It might have
14 been covered earlier. I'm not sure.
15    MR. FISCHER: No. Mr.
16 Cloherty, you asked about the
17 embezzling and Mr. -- and the
18 witness answered that it involved --
19 that he made complaints to the
20 Winchendon Police and that page --
21 it's in 30, 35, 36.
22    MR. STERN: He was talking
23 about today I think.
24    MR. CLOHERTY: I'm not

**705**

1  disputing what the earlier day's
2  transcripts provided. I thought
3  today he was talking about involving
4  Ashburnham.
5     MR. FISCHER: I don't
6  remember that.
7     MR. STERN: He said it might
8  have been his mistake so.
9     MR. FISCHER: Are we
10 finished?
11    MS. PELLETIER: Before we go
12 off the record, unless I am missing
13 something, all the sets of answers
14 to interrogatories which we received
15 from Ken Jean, the last
16 interrogatory which was number 13
17 sets forth an action and then says
18 "without waiving" and it's blank and
19 then there's a signature of both Mr.
20 --
21    MR. FISCHER: May I see?
22    MS. PELLETIER: Yup, Mr. Jean
23 and Mr. Fischer, and if necessary we
24 can make this one an exhibit. I

**706**

1  would ask for a supplement for that
2  assuming that there is a substantive
3  response.
4     MR. STERN: At the top of the
5  page it says, "Without waiving, see
6  answers to preceding interrogatories
7  and allegations of complaint." You
8  want a copy of mine? Are you
9  talking about the -- what, this is a
10 different one?
11    MR. FISCHER: You have --
12    MR. CLOHERTY: Do we need to
13 do this on the record?
14    MS. PELLETIER: I just want
15 to make a record of the fact that I
16 don't have a complete set of answers
17 to interrogatories.
18    MR. FISCHER: That's
19 Ashburnham and this is Wolski.
20 There's a sentence --
21    MS. PELLETIER: I'm
22 requesting on the record that I
23 receive a response to that,
24 Mr. Fischer.

**707**

1     MR. FISCHER: I think that
2  there's a sentence that's missing
3  from the one you showed me which
4  is --
5     MS. PELLETIER: I don't need
6  the answer on the record 'cause I'd
7  like you to confer with your client
8  to make sure that's accurate before
9  we put it and if that's all that it
10 is, you can just put it to me in
11 writing.
12    MR. FISCHER: Fine.
13    MR. STERN: It's just two
14 words, "without waiving," and it
15 doesn't go anywhere.
16    MR. CLOHERTY: Go off the
17 record. Are we all set?
18    MS. PELLETIER: Go off.
19    (Whereupon, the deposition suspended
20 at 3:18 p.m.)

CURRAN COURT REPORTING



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************************
KENNETH AND PAMELA PRICE JEAN            *
                                         *
              Plaintiffs                 *
                                         *
v.                                       *
                                         *
CITY OF ASHBURNHAM POLICE                *
DEPARTMENT, CITY OF WINCHENDON           *
POLICE DEPARTMENT, ROB HARRINGTON,       *
in his capacity as CHIEF OF THE WINCHENDON *   C.A. NO. 03-12306FDS
POLICE DEPARTMENT, JACK MURRY, in his    *
capacity as CHIEF OF THE ASHBURNHAM      *
POLICE DEPARTMENT, TODD C. PARSONS       *
RAYMOND M. ANAIR, ROBERT BRENNON,        *
WILLIAM P. GEOFFROY, BRIAN HART,         *
KEVIN AHEARN, KEVIN E. WOLSKI            *
OFFICER JOHN DOE, OFFICER JOHN POE.      *
                                         *
              Defendants                 *
*******************************************

## SUPPLEMENTAL INTERROGATORY TO DEFENDANT, ROB HARRINGTON

1. Please describe all facts and circumstances regarding the departure of Officer Whitaker from the Winchendon Police force, including in your answer any involvement of either of the plaintiffs regarding actions leading to Officer Whitaker's departure, retirement, removal or resignation as a police officer; the reasons for Officer Whitaker's departure as a police officer; all other facts and circumstances in detail regarding Officer Whitaker's departure as a police officer.

                                    Respectfully submitted,
                                    Kenneth Jean, et al
                                    by their counsel

Date: 8/28/06

                                    Andrew M. Fischer
                                    BB0# 167040
                                    JASON & FISCHER
                                    47 Winter Street
                                    Boston, MA 02108
                                    (617) 423-7904



EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*****************************************
KENNETH AND PAMELA PRICE JEAN           *
                                        *
                Plaintiffs              *
                                        *
v.                                      *
                                        *
CITY OF ASHBURNHAM POLICE               *
DEPARTMENT, CITY OF WINCHENDON          *
POLICE DEPARTMENT, ROB HARRINGTON,      *
in his capacity as CHIEF OF THE WINCHENDON *  C.A. NO. 03-12306FDS
POLICE DEPARTMENT, JACK MURRY, in his   *
capacity as CHIEF OF THE ASHBURNHAM     *
POLICE DEPARTMENT, TODD C. PARSONS      *
RAYMOND M. ANAIR, ROBERT BRENNON,       *
WILLIAM P. GEOFFROY, BRIAN HART,        *
KEVIN AHEARN, KEVIN E. WOLSKI           *
OFFICER JOHN DOE, OFFICER JOHN POE.     *
                                        *
                Defendants              *
*****************************************
```

## SUPPLEMENTAL INTERROGATORY TO DEFENDANT, TOWN OF WINCHENDON

1. Please describe all facts and circumstances regarding the departure of Officer Whitaker from the Winchendon Police force, including in your answer any involvement of either of the plaintiffs regarding actions leading to Officer Whitaker's departure, retirement, removal or resignation as a police officer; the reasons for Officer Whitaker's departure as a police officer; all other facts and circumstances in detail regarding Officer Whitaker's departure as a police officer.

Respectfully submitted,
Kenneth Jean, et al
by their counsel

Date: 8/25/06

Andrew M. Fischer
BBO# 167040
JASON & FISCHER
47 Winter Street
Boston, MA 02108
(617) 423-7904



EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12306-FDS

KENNETH AND PAMELA PRICE JEAN, )
    Plaintiffs )
  )
  )
vs. )
  )
CITY OF ASHBURNHAM POLICE )
DEPARTMENT, CITY OF WINCHENDON )
POLICE DEPARTMENT, )
ROB HARRINGTON, in his capacity as )
CHIEF OF THE WINCHENDON POLICE )
DEPARTMENT, JACK MURRY, in his capacity )
as CHIEF OF THE ASHBURNHAM POLICE )
DEPARTMENT, TODD C. PARSONS, )
RAYMOND M. ANAIR, ROBERT BRENNON, )
WILLIAM P. GEOFFROY, BRIAN HART, )
KEVIN AHEARN, KEVIN E. WOLSKI )
OFFICER JOHN DOE, OFFICER JOHN DOE, )
    Defendants )

## DEFENDANT, ROB HARRINGTON'S, ANSWER TO SUPPLEMENTAL INTERROGATORY

QUESTION

1. Please describe all facts and circumstances regarding the departure of Officer Whitaker from the Winchendon Police force, including in your answer any involvement of either of the plaintiffs regarding actions leading to Officer Whitaker's departure, retirement, removal or resignation as a police officer; the reasons for Officer Whitaker's departure as a police officer; all other facts and circumstances in detail regarding Officer Whitaker's departure as a police officer.

ANSWER

    OBJECTION. The defendant, Rob Harrington, objects to this interrogatory on the grounds that it is calculated to annoy and harass the defendant; seeks information neither relevant nor material to this legal action nor reasonably calculated to lead to the discovery of admissible evidence; and exceeds the scope of discovery permitted by Mass. R. Civ. P. 26.

459310



Page 2 of 2

Signed under the pains and penalties of perjury this 18 day of October, 2006.

_____
Rob Harrington

AS TO OBJECTIONS:

By _____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 544402

CERTIFICATE OF SERVICE

I, Nancy Frankel Pelletier, Esq., hereby certify that on this 3rd day October, 2006, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to counsel:

| Andrew M. Fischer, Esq.<br>Jason & Fischer<br>47 Winter Street<br>Boston, MA 02108 | Mark D. Stern, Esq.<br>34 Liberty Avenue<br>Somerville, MA 02144 |
|---|---|
| Michael Akerson, Esq.<br>Austin M. Joyce, Esq.<br>Andrew J. Gambaccini, Esq.<br>Reardon, Joyce & Akerson, P.C.<br>397 Grove Street<br>Worcester, MA 01605 | Douglas I. Louison, Esq.<br>Regina M. Ryan, Esq.<br>Merrick, Louison & Costello, LLP<br>67 Batterymarch Street<br>Boston, MA 02110 |
| John J. Cloherty, III<br>Pierce, David, Perritano, LLP<br>Ten Winthrop Square<br>Boston, MA 02110 | |

Subscribed under the penalties of perjury.

_____
Nancy Frankel Pelletier, Esq.

459310

Page 1 of 1



EXHIBIT E

**markdsternpc@rcn.com**

**From:** "Mark D. Stern P.C." <markdsternpc@rcn.com>
**To:** <Npelletier@Robinson-Donovan.com>
**Cc:** "Andrew M. Fischer" <AFischer@jasonandfischer.com>
**Sent:** Wednesday, October 25, 2006 11:45 AM
**Subject:** Harrington Supp'l Int. Answer

Nancy

Please treat this as a Rule 7.1 conference. We consider your answer to the Supplemental Interrogatory inadequate. If you want to further confer on this matter, please advise Andy and me when you would like to have us confer with you.

Cordially, Mark Stern

10/25/2006

NOV-6-2006 03:03P FROM:MARK D STERN PC 6127269350  Filed 11/06/2006  Page 9 of 14  P:9/11
Case 4:03-cv-12306-PDS  Document 80-2

Page 1 of 2

**markdsternpc@rcn.com**

| | |
|---|---|
| From: | "Mark D. Stern P.C." <markdsternpc@rcn.com> |
| To: | "PELLETIER, N" <npelletier@Robinson-Donovan.com> |
| Cc: | "Andrew M. Fischer" <AFischer@jasonandfischer.com> |
| Sent: | Wednesday, October 25, 2006 1:42 PM |
| Subject: | Re: Harrington Supp'l Int. Answer |

Nancy

You provided no answer in the copy I received, only an objection that seems to me to be utterly without merit based on the most recent disclosure regarding Whitaker. If either of Plaintiff's acts had anything to do with Whitaker's departure from the force, it could provide an explanation for why they were treated as they were by other officers.

Cordially, Mark Stern

---- Original Message ----
From: PELLETIER, N
To: Mark D. Stern P.C.
Cc: RIVENBURGH, R
Sent: Wednesday, October 25, 2006 1:11 PM
Subject: RE: Harrington Supp'l Int. Answer

Pls advise as to why you believe that it is inadequate.

**Nancy Frankel Pelletier, Esq.**
Robinson Donovan, P C
1500 Main Street - Suite 1600
PO Box 15609
Springfield, MA 01115-5609
(413) 732-2301 | Fax (413) 785-4658
npelletier@robinson-donovan.com
www.robinson-donovan.com
Bio | Add to Outlook



**Robinson Donovan, P.C.**
Springfield | Northampton

-----Original Message-----
From: Mark D. Stern P.C.
[mailto:markdsternpc@rcn.com]
Sent: Wednesday, October 25, 2006 11:46 AM
To: PELLETIER, N
Cc: Andrew M. Fischer
Subject: Harrington Supp'l Int. Answer

Nancy

Please treat this as a Rule 7.1 conference. We consider your answer to the Supplemental Interrogatory inadequate. If you want to further confer on this matter, please advise Andy and me when you would like to have us confer with you.

Cordially, Mark Stern

**IRS Circular 230 Disclosure:** Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used by any taxpayer, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer; or (ii)

NOV-6-2006 03:03P FROM:MARK D STERN 6172329502 TO:9413+7854658 P:10/11
Case 4:03-cv-12306-FDS Document 85-2 Filed 11/06/2006 Page 10 of 14

Page 1 of 3

**markdsternpc@rcn.com**

| | |
|---|---|
| From: | "Andrew M. Fischer" <afischer@jasonandfischer.com> |
| To: | "Mark D. Stern P.C." <markdsternpc@rcn.com> |
| Cc: | "PELLETIER, N" <npelletier@Robinson-Donovan.com> |
| Sent: | Wednesday, October 25, 2006 2:27 PM |
| Subject: | Re: Harrington Supp'l Int. Answer |

Nancy

I am in accord with Mark

Andrew M. Fischer

Mark D. Stern P.C. wrote:

> Nancy
>
> You provided no answer in the copy I received, only an objection that
> seems to me to be utterly without merit based on the most
> recent disclosure regarding Whitaker. If either of Plaintiff's acts
> had anything to do with Whitaker's departure from the force, it could
> provide an explanation for why they were treated as they were by other
> officers.
>
> Cordially, Mark Stern
>
> ----- Original Message -----
> *From:* PELLETIER, N <mailto:npelletier@Robinson-Donovan.com>
> *To:* Mark D. Stern P.C. <mailto:markdsternpc@rcn.com>
> *Cc:* RIVENBURGH, R <mailto:rrivenburgh@Robinson-Donovan.com>
> *Sent:* Wednesday, October 25, 2006 1:11 PM
> *Subject:* RE: Harrington Supp'l Int. Answer
>
> Pls advise as to why you believe that it is inadequate.
>
>
>
>
> *Nancy Frankel Pelletier, Esq.*
>
> Robinson Donovan, P.C.
> 1500 Main Street - Suite 1600
> PO Box 15609
> Springfield, MA 01115-5609
> (413) 732-2301 | Fax (413) 785-4658
> npelletier@robinson-donovan.com
> <mailto:npelletier@robinson-donovan.com>
> www.robinson-donovan.com <http://www.robinson-donovan.com>
> Bio |
> <http://www.robinson-donovan.com/attorney_detail.epl?attorney_id=22>Add

Page 1 of 1

**EXHIBIT F**

**markdsternpc@rcn.com**

**From:** "Mark D. Stern P.C." <markdsternpc@rcn.com>
**To:** <npelletier@Robinson-Donovan.com>
**Cc:** "Andrew M. Fischer" <AFischer@jasonandfischer.com>
**Sent:** Monday, November 06, 2006 10:09 AM
**Subject:** your letters

Ms. Pelletier

I received two identical letters from you today. Mr. Fischer indicates he will respond thereto. In the interim, I will be filing a motion to compel as to your failure to answer the Winchendon and Harrington supplemental interrogatory about which we have conferred back and forth. I believe our obligation to confer is now satisfied, but, if you wish to further confer before I file said motion, please advise me this morning.

Cordially, Mark Stern

Deposition of Kenneth Jean Volume 3
August 23, 2006

**676**

1  Q. Okay. Are you aware of your wife's
2  being diagnosed as abusing alcohol as of May
3  of 2001?
4  A. Am I aware of her being -- I don't
5  know what she's been diagnosed of, ma'am, in
6  most part.
7  Q. Were you present with her when she
8  went to the hospital in May of 2001?
9  A. I've been present with her a couple
10 of times at the hospital. I don't know which
11 incident you're referring to.
12 Q. Do you recall any occurrences on
13 which you actually took her to the hospital?
14 A. Yes, ma'am.
15 Q. And do you recall taking her to the
16 hospital the day after the incident in May of
17 2001?
18 A. I believe I do.
19 Q. Did you provide information to any
20 healthcare professional about your wife's
21 history or condition at any time?
22 A. I don't know, ma'am.
23 Q. Are you aware of your wife attending
24 Alcoholics Anonymous?

CURRAN COURT REPORTING

**677**

1  A. Yes, ma'am, she went with me.
2  Q. And when is it that you claim you
3  went?
4  A. I'm sorry?
5  Q. When is it that you claim you went?
6  A. Oh, multiple dates over years.
7  Q. When did you start going?
8  A. Would have been the first DUI.
9  Q. Your first DUI was 15, 20 years ago,
10 right?
11 A. I don't know when the first one was,
12 ma'am. It would have been the first one that
13 Ashburnham had charged with me.
14 Q. Was it before you were married?
15 A. Well, I believe it might have been
16 before, yeah, I'm almost certain it was.
17 Q. So you had -- you heard your wife
18 testify today that she didn't go to AA until
19 after the house fire?
20 A. That would be incorrect.
21 Q. Do you claim that any of the
22 activities of the Winchendon Police Department
23 had anything to do with an officer by the name
24 of Whitaker?

CURRAN COURT REPORTING

**678**

1  A. Yes, ma'am.
2  Q. You never mentioned that prior to me
3  asking you that question, is that fair to
4  state? We've been sitting here for almost
5  three hours, correct?
6  A. Why would I, ma'am? I totally
7  forgot him. He was not part of this
8  harassment, that all came about after. He was
9  a very early age, I'm going to say 1988 or
10 '89, it was a lone event, it was totally
11 unrelated to all of this.
12 Q. Totally unrelated to all of this?
13 A. Yes, ma'am. Unless any of the
14 police departments harbor animosity towards me
15 from that, but I would have no knowledge of
16 that.
17       MR. FISCHER: Wait for a
18    question, answer the question and
19    then wait for the next question.
20 Q. Is it fair to state that you don't
21 have any personal knowledge of any of the
22 incidents that occurred between the Winchendon
23 police officers and your wife other than
24 information you received from your wife?

CURRAN COURT REPORTING

**679**

1  A. No, ma'am.
2  Q. From whom did you receive
3  information other than your wife regarding the
4  incidents that occurred between the Winchendon
5  police officers and your wife?
6  A. Chief Harrington for one. All the
7  court cases I attended with my wife, that type
8  of thing, all probation interviews we went to.
9  Q. Well, what information did you
10 receive during the course of those events
11 other than the information from your wife?
12 From whom did you --
13 A. I would have been privy to all her
14 police reports. The police reports with
15 prostitute on it, I certainly seen a number of
16 times. Conversations with her counsel,
17 probation officer, again, Paul Trippi, things
18 to that effect.
19 Q. I'm asking you about anybody that
20 has any personal knowledge of the events that
21 occurred between your wife and the Winchendon
22 Police Department, do you have any information
23 from any source as to the facts that existed
24 between your wife and the Winchendon police

CURRAN COURT REPORTING

Deposition of Kenneth Jean Volume 3
August 23, 2006

Page 700

1  testimony, sir?
2  A. Yes, I do.
3  Q. I thought earlier, and correct me if
4  I'm wrong, I thought earlier you testified
5  that that request to investigate had been made
6  to Ashburnham Police Department?
7  A. No, sir, Winchendon. That was
8  before I moved to Ashburnham.
9  Q. So earlier when you were responding
10 to my questions about your discussions with
11 the police about the investigation of
12 embezzlement, you were referring to the
13 Winchendon Police Department?
14 A. Yes, sir. I'm sorry if I didn't --
15 Q. It may have been a misunderstanding
16 on my part, I just want to clarify that. Did
17 Ashburnham Police have anything to do with the
18 investigation of the embezzlement charges,
19 sir?
20 A. Absolutely not, sir.
21 Q. The last question I want to ask you
22 is just a follow-up on the Officer Whitaker
23 allegations that you said were unrelated to
24 this. Do you recall that testimony, sir?

CURRAN COURT REPORTING

Page 701

1  A. Yes, sir.
2  Q. Just to clarify what it was we were
3  referring to. What happened with Officer
4  Whitaker back in '88 or '89 as you described?
5  A. I believe it was early '89, probably
6  February, Officer Whitaker arrested me for
7  DWI, it turned out that he had never completed
8  the Civil Service test so he could not be a
9  police officer in Winchendon and they threw
10 his cases out.
11 Q. Because he wasn't a qualified police
12 officer at the time of the arrest?
13 A. And the town paid me the sum of $1
14 to not file a suit against him.
15 Q. And how was that payment of $1 made
16 by the town?
17 A. They never paid it.
18 Q. So do you have any record of any
19 agreement from --
20 A. It was said in open court. I
21 imagine they do the thing in court thing.
22 Q. In open court someone from the
23 Winchendon Police said we will pay him $1 not
24 to bring a claim?

CURRAN COURT REPORTING

Page 702

1  A. The Winchendon Council I believe it
2  was, yes, sir. I believe it was the
3  Winchendon Council when they said 'cause it
4  was all done, you know, 'cause it was all
5  done, you know, you go make the deal behind
6  doors and then they come out and they announce
7  it to the judge saying they're going to
8  withdraw this police officer in -- what do
9  they call it -- fair payment of $1 to Mr. Jean
10 and stuff and then I actually did say
11 something after, I said where's my buck, and
12 it was Attorney Pusateri said don't push it.
13 Q. Attorney Pusateri said don't push
14 it?
15 A. Yes, sir.
16 Q. That was your attorney at the time?
17 A. Yes, sir.
18 Q. Do you remember who town council was
19 for Winchendon at that time?
20 A. No, sir.
21 Q. Did Officer Whitaker, he was working
22 for the Winchendon Police Department at that
23 time?
24 A. Yes, sir.

CURRAN COURT REPORTING

Page 703

1  Q. That didn't have anything to do with
2  Ashburnham either?
3  A. No, sir.
4  MR. CLOHERTY: I don't have
5  any further questions for you
6  subject to the same reservations as
7  Ms. Pelletier.
8  MR. STERN: I just have one
9  more question based on Whitaker
10 stuff.
11 **RECROSS-EXAMINATION**
12 By Mr. Stern:
13 Q. How did it come -- do you know how
14 it came to be known that Officer Whitaker
15 didn't take the Civil Service exam?
16 A. My next door neighbor who ran the
17 laundry in town told me that Officer Whitaker
18 never took the Civil Service test, but he got
19 on because his brother-in-law was the chief of
20 police. I referred that to my counsel who
21 called the state Civil Service and the state
22 was very upset with him at the time and they
23 actually offered to come up for the trial or
24 it might have been a motion.

CURRAN COURT REPORTING

Deposition of Kenneth Jean Volume 3
August 23, 2006

704

Q. So it was brought up by your attorney?
A. Yes, sir.
Q. Thank you. And that ended up causing Officer Whitaker to have to resign from the force?
A. Yes, sir, and they gave him a $5,000 severance pay.
MR. STERN: Thank you.
MR. FISCHER: I would just point out for the record that Mr. --
MR. CLOHERTY: It might have been covered earlier. I'm not sure.
MR. FISCHER: No. Mr. Cloherty, you asked about the embezzling and Mr. -- and the witness answered that it involved -- that he made complaints to the Winchendon Police and that page -- it's in 30, 35, 36.
MR. STERN: He was talking about today I think.
MR. CLOHERTY: I'm not

CURRAN COURT REPORTING

705

disputing what the earlier day's transcripts provided. I thought today he was talking about involving Ashburnham.
MR. FISCHER: I don't remember that.
MR. STERN: He said it might have been his mistake so.
MR. FISCHER: Are we finished?
MS. PELLETIER: Before we go off the record, unless I am missing something, all the sets of answers to interrogatories which we received from Ken Jean, the last interrogatory which was number 13 sets forth an action and then says "without waiving" and it's blank and then there's a signature of both Mr. --
MR. FISCHER: May I see?
MS. PELLETIER: Yup, Mr. Jean and Mr. Fischer, and if necessary we can make this one an exhibit. I

CURRAN COURT REPORTING

706

would ask for a supplement for that assuming that there is a substantive response.
MR. STERN: At the top of the page it says, "Without waiving, see answers to preceding interrogatories and allegations of complaint." You want a copy of mine? Are you talking about the -- what, this is a different one?
MR. FISCHER: You have --
MR. CLOHERTY: Do we need to do this on the record?
MS. PELLETIER: I just want to make a record of the fact that I don't have a complete set of answers to interrogatories.
MR. FISCHER: That's Ashburnham and this is Wolski. There's a sentence --
MS. PELLETIER: I'm requesting on the record that I receive a response to that, Mr. Fischer.

CURRAN COURT REPORTING

707

MR. FISCHER: I think that there's a sentence that's missing from the one you showed me which is --
MS. PELLETIER: I don't need the answer on the record 'cause I'd like you to confer with your client to make sure that's accurate before we put it and if that's all that it is, you can just put it to me in writing.
MR. FISCHER: Fine.
MR. STERN: It's just two words, "without waiving," and it doesn't go anywhere.
MR. CLOHERTY: Go off the record. Are we all set?
MS. PELLETIER: Go off.
(Whereupon, the deposition suspended at 3:18 p.m.)

CURRAN COURT REPORTING